Kevin R. Mintz, Esq. (Bar No. 172299)
Bryce Gray, Esq. (Bar No. 215176)
RANKIN, SPROAT, MIRES, BEATY & REYNOLDS
A Professional Corporation
1333 Broadway, Suite 600
Oakland, CA 94612
Tel: (510) 465-3922 – Fax: (510) 452-3006

ORIGINAL FILED
JUN 4 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Attorneys for:
CAVCO INDUSTRIES, INC.

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

JOYCE ANDERSON and MICHAEL ANDERSON,

              Plaintiffs,

vs.

CAL-AM PROPERTIES, INC.; CAVCO INDUSTRIES, INC. and DOES 1-100, Inclusive,

              Defendants.

_____/

Case Number CV 08 2799

**CERTIFICATE OF SERVICE OF NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT**

AMANDA M. WILLIAMS certifies and declares as follows:

    I am over the age of 18 years and not a party to this action.

    My business address is 1333 Broadway, Suite 600, Oakland, California 94612, which is located in the city, county and state where the mailing described below took place.

    On June 4, 2008, I deposited in the United States Mail at Oakland, California, a copy of the Notice to Adverse Party of Removal to Federal Court dated June 4, 2008 to Counsel for AM-Cal Properties, Inc. – Hart, King & Colden, a copy of which is attached to this certificate.

    One June 4, 2008, I deposited in a Federal Express depository – Via Standard Overnight at Oakland, California, a copy of the Notice to Adverse Party of Removal to Federal

1

Court dated June 4, 2008 to Counsel for Plaintiffs – Greene, Chauvel, Descalso & Minoletti, a

2

copy of which is attached to this certificate.

3

I declare under penalty of perjury that the forgoing is true and correct.

4

Executed on June 4, 2008.

5

6

*Amanda M. Williams*
Amanda M. Williams

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Kevin R. Mintz, Esq. (Bar No. 172299)
2   Bryce Gray, Esq. (Bar No. 215176)
    RANKIN, SPROAT, MIRES, BEATY & REYNOLDS
3   A Professional Corporation
    1333 Broadway, Suite 600
4   Oakland, CA 94612
    Tel: (510) 465-3922 – Fax: (510) 452-3006
5
6   Attorneys for:
    CAVCO INDUSTRIES, INC.
7

8
                 SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
9
10                              UNLIMITED JURISDICTION

11
    JOYCE ANDERSON and MICHAEL          Case Number:  HG08384688
12  ANDERSON,
                                        **NOTICE TO ADVERSE PARTY OF**
13              Plaintiffs,             **REMOVAL TO FEDERAL DISTRICT**
                                        **COURT**
14
    vs.
15
    CAL-AM PROPERTIES, INC.; CAVCO
16  INDUSTRIES, INC. and DOES 1-100,
    Inclusive,
17
18              Defendants.
    _____/
19
20  **TO PLAINTIFFS JOYCE ANDERSON and MICHAEL ANDERSON, THEIR**

21  **ATTORNEYS OF RECORD:**

22          PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1441 and 1446,

23  defendant CAVCO INDUSTRIES, INC. ("Cavco"), which is one of only two existing named

24  defendants in the action filed in the Superior Court of the State of California in and for the

25  County of Alameda (Case No.: HG08384688 entitled "*JOYCE ANDERSON and MICHAEL*

26  *ANDERSON, plaintiffs, vs. CAL-AM PROPERTIES, INC.; CAVCO INDUSTRIES, INC. and*

27  *DOES ONE through ON HUNDRED, inclusive, Defendants*") has filed in the United States
28

Notice of Removal to Federal District Court          1

District Court for the Northern District of California a **Notice of Removal** of the above-entitled action.

    A true and correct copy of the Notice of Removal filed in the United States District Court for the Northern District of California is attached hereto as **Exhibit A.** Cavco's Notice of Removal is joined by the other named defendant, Cal-Am Properties, Inc. ("Cal-Am") A copy of Cal-Am's Joinder in Notice of Removal is attached hereto as **Exhibit B.**

Dated: June 04, 2008.

RANKIN, SPROAT, MIRES, BEATY & REYNOLDS

By: _____
Kevin R. Mintz, Esq.
Bryce Gray, Esq.
Attorneys for Defendant,
CAVCO INDUSTRIES, INC.

1

## PROOF OF SERVICE

2

I declare that I am employed in the County of Alameda, State of California. I am

3

over the age of eighteen years and not a party to the within cause. My employment address is

4

1333 Broadway, Suite 600, Oakland, California 94612.

5

On June 4, 2008, I served copies of the attached document entitled: **NOTICE TO**

6

7

**ADVERSE PARTY OF REMOVAL TO FEDERAL DISTRICT COURT** on the interested

8

parties in this action, by placing a true and correct copy thereof enclosed in a sealed envelope,

9

addressed as follows:

10

| | |
|---|---|
| **JOYCE ANDERSON and MICHAEL ANDERSON** | **Attorneys for CAL-AM PROPERTIES, INC.** |
| Paul G. Minoletti, Esq. | John Pentecost, Esq. |
| Brandon L. Reeves, Esq. | Boyd L. Hill, Esq. |
| Greene, Chauvel, Descalso & Minoletti | Hart, King & Coldren, a PLC |
| 155 Bovet Road, Suite 780 | 200 Sandpointe, 4th Floor |
| San Mateo, CA 94402 | Santa Ana, CA 92707 |
| Tel: (650) 573-9500 | Tel: (714) 432-8700 |
| Fax: (650) 573-9689 | Fax: (714) 546-7457 |
| | Email: jpentecost@hkclaw.com |

11

12

13

14

15

16

17  [XX]  **BY U.S. MAIL.** I caused such envelope to be placed for deposit in the U.S. Postal Service in a sealed envelope, with postage prepaid, addressed to the above, and that envelope was placed for collection and mailing on that date following ordinary business. (CCP § 1013a(3))

18

19  [XX]  **BY FEDERAL EXPRESS.** I caused such envelope to be deposited in a Federal Express depository at Oakland, California. **[Standard Overnight to Plaintiffs' Attorneys – Greene, Chauvel, Descalso & Minoletti ONLY.]**

20

21  [  ]  **BY PERSONAL SERVICE.** I caused such envelope to be delivered by hand to the offices of the addressee(s).

22  [  ]  **BY FAX TRANSMISSION.** Pursuant to Rule 2.306 of the California Rules of Court, I caused such document to be transmitted via facsimile to the offices of the addressee(s).

23  [XX]  **STATE.** I declare under penalty of perjury under the laws of the state of California that the above is true and correct.

24

25  [  ]  **FEDERAL.** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

26

Executed on June 4, 2008, at Oakland, California.

27

*Amanda M. Williams*

28

Amanda M. Williams

Notice of Removal to Federal District Court        3

# Exhibit A

**(Notice to Adverse Party of Removal To Federal District Court)**

1  Kevin R. Mintz, Esq. (Bar No. 172299)
2  Bryce Gray, Esq. (Bar No. 215176)
   RANKIN, SPROAT, MIRES, BEATY & REYNOLDS
3  A Professional Corporation
   1333 Broadway, Suite 600
4  Oakland, CA  94612
   Tel: (510) 465-3922 – Fax: (510) 452-3006
5
   Attorneys for:
6  CAVCO INDUSTRIES, INC.

7

8                    UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10

11  JOYCE ANDERSON and MICHAEL          Case Number:
    ANDERSON,
12                                       **NOTICE OF REMOVAL OF ACTION**
                                         **PURSUANT TO 28 U.S.C. SECTION 1441(b)**
13            Plaintiffs,                **[FEDERAL QUESTION]**

14  vs.

15  CAL-AM PROPERTIES, INC.; CAVCO
    INDUSTRIES, INC. and DOES 1-100,
16  Inclusive,

17            Defendants.

18  _____/

19  **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

20          PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1441 and 1446,

21  defendant CAVCO INDUSTRIES, INC. ("Cavco"), one of the only two existing named

22  defendants in the action filed in the Superior Court of the State of California in and for the

23  County of Alameda (Case No.: HG08384688 entitled "*JOYCE ANDERSON and MICHAEL*

24  *ANDERSON, plaintiffs, vs. CAL-AM PROPERTIES, INC.; CAVCO INDUSTRIES, INC. and*

25  *DOES ONE through ONE HUNDRED, inclusive, Defendants*"), hereby removes this action to

26  the United States District Court for the Northern District of California, based on the following

27  grounds:

28  Notice of Removal of Action Pursuant to 28 U.S.C. Section 1441(b) [Federal Question]      1  "Exhibit "A"

1.    On or about April 29, 2008, counsel for plaintiffs initiated this action with the filing of a Complaint for Damages (the "Complaint") in the Superior Court of the State of California, in and for the County of Alameda, entitled "*JOYCE ANDERSON and MICHAEL ANDERSON, plaintiffs, vs. CAL-AM PROPERTIES, INC.; CAVCO INDUSTRIES, INC. and DOES ONE through ON HUNDRED, inclusive, Defendants*", Case No. HG08384688. A true and correct copy of the Complaint is attached hereto as **Exhibit A.**

2.    The Complaint and Summons were served on Cavco on May 5, 2008, and thereafter served on defendant Cal-Am Properties, Inc. ("Cal-Am") on May 6, 2008. This Notice of Removal is the first paper or pleading that any of the defendants have filed in this action. This Notice of Removal will be filed within 30 days after defendants received and became aware of the allegations of the Complaint. A true and correct copy of the Summons served on Cavco is attached hereto as **Exhibit B**.

3.    <u>Jurisdiction</u>. As that Complaint reflects, plaintiffs' claims are that defendants committed various wrongful acts and/or breaches of warranty in reference to the manufacture and sale of their manufactured home, including violating the federal statute known as the Magnuson-Moss Warranty Act, codified at 15 U.S.C. §2301(3) (hereinafter, referred to as "Warranty Act"). Among other remedies, the Complaint seeks rescission and restitution of the entire purchase price of $170,507.00. Thus, this action is a civil action of which this court has original jurisdiction under 28 U.S.C. Section 1331, and is one which may be removed to this Court by defendants pursuant to the provisions of 28 U.S.C. Section 1441(a), in that plaintiffs' claims, as pled in the Complaint, involve claims that arise under a federal statute, the Warranty Act. While the claim under the Warranty Act is the only federal claim pled by plaintiffs, this court has supplemental jurisdiction over the remaining claims asserted against defendants pursuant to 28 U.S.C. Section 1367(a) in that they are so related to the Warranty Act claim that

they form part of the same case or controversy.

      4.    All named defendants join in and agree with the removal of this action as indicated by the Cal-Am Joinder in Notice of Removal filed concurrently herewith.

      5.    Fewer than 30 days will have elapsed between the time that defendants learned of and received a copy of the Complaint and the date that this Notice of Removal will be filed such that this matter is removable to this Court (see 28 U.S.C. §1446(b)).

      6.    Counsel for defendant Cavco has signed this Notice of Removal pursuant to Federal Rule of Civil Procedure 11.

      WHEREFORE, defendant respectfully requests that this action be removed to this Court.

Dated: June 04, 2008.

                        RANKIN, SPROAT, MIRES, BEATY & REYNOLDS

                        By: _____

                           Kevin R. Mintz
                           Bryce Gray
                           Attorneys for Defendant,
                           CAVCO INDUSTRIES, INC.

## PROOF OF SERVICE

I declare that I am employed in the County of Alameda, State of California. I am over the age of eighteen years and not a party to the within cause. My employment address is 1333 Broadway, Suite 600, Oakland, California 94612.

On June 4, 2008, I served copies of the attached document entitled: **NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. SECTION 1441(b) [FEDERAL QUESTION]; CIVIL COVER SHEET** on the interested parties in this action, by placing a true and correct copy thereof enclosed in a sealed envelope, addressed as follows:

| | |
|---|---|
| **JOYCE ANDERSON and MICHAEL ANDERSON**<br>Paul G. Minoletti, Esq.<br>Brandon L. Reeves, Esq.<br>Greene, Chauvel, Descalso & Minoletti<br>155 Bovet Road, Suite 780<br>San Mateo, CA 94402<br>Tel: (650) 573-9500<br>Fax: (650) 573-9689 | **Attorneys for CAL-AM PROPERTIES, INC.**<br>John Pentecost, Esq.<br>Boyd L. Hill, Esq.<br>Hart, King & Coldren, a PLC<br>200 Sandpointe, 4th Floor<br>Santa Ana, CA 92707<br>Tel: (714) 432-8700<br>Fax: (714) 546-7457<br>Email: jpentecost@hkclaw.com |

[XX]  **BY U.S. MAIL.** I caused such envelope to be placed for deposit in the U.S. Postal Service in a sealed envelope, with postage prepaid, addressed to the above, and that envelope was placed for collection and mailing on that date following ordinary business. (CCP § 1013a(3))

[XX]  **BY FEDERAL EXPRESS.** I caused such envelope to be deposited in a Federal Express depository at Oakland, California. **[Standard Overnight to Plaintiffs' Attorneys – Greene, Chauvel, Descalso & Minoletti ONLY.]**

[  ]  **BY PERSONAL SERVICE.** I caused such envelope to be delivered by hand to the offices of the addressee(s).

[  ]  **BY FAX TRANSMISSION.** Pursuant to Rule 2.306 of the California Rules of Court, I caused such document to be transmitted via facsimile to the offices of the addressee(s).

[XX]  **STATE.** I declare under penalty of perjury under the laws of the state of California that the above is true and correct.

[  ]  **FEDERAL.** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 4, 2008, at Oakland, California.



Amanda M. Williams

# Exhibit A

1   PAUL G. MINOLETTI, ESQ./SBN 118192
2   BRANDON L. REEVES, ESQ./SBN 242897
    GREENE, CHAUVEL, DESCALSO & MINOLETTI
    155 Bovet Road, Suite 780
3   San Mateo, CA 94402
    Telephone: (650) 573-9500
4   Facsimile:  (650) 573-9689

5   Attorneys for Plaintiffs
    JOYCE ANDERSON and MICHAEL ANDERSON
6

                                        ENDORSED
                                          FILED
                                    ALAMEDA COUNTY

                                      APR 2 9 2008

                          CLERK OF THE SUPERIOR COURT
                          By Graciela Pacheco, Deputy

7
8
9           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
                          UNLIMITED JURISDICTION
10             IN AND FOR THE COUNTY OF ALAMEDA
11
12  JOYCE ANDERSON and MICHAEL          )   Case No.    HG08384688
    ANDERSON,                           )
13                                      )   COMPLAINT FOR DAMAGES
               Plaintiffs,              )
14                                      )   (1)   BREACH OF CONTRACT -
    vs.                                 )         PURCHASE ORDER;
15                                      )   (2)   BREACH OF WARRANTY;
    CAL-AM PROPERTIES, INC.; CAVCO      )   (3)   NEGLIGENCE;
16  INDUSTRIES, INC. and DOES ONE       )   (4)   MISREPRESENTATION
    through ONE HUNDRED, inclusive,     )
17                                      )
               Defendants.              )
18  _____)
19
20         Plaintiffs JOYCE ANDERSON and MICHAEL ANDERSON complain and allege
21  against Defendants and each of them as follows:
22                      GENERAL ALLEGATIONS
23         1.     Plaintiffs JOYCE ANDERSON and MICHAEL ANDERSON (referred to herein
24  as "Plaintiffs") are, and at all times herein mentioned were, residents of Alameda County.
25         2.     Plaintiffs are and were at all times herein mentioned, the "Buyer" and
26  "Consumer" within the meaning of Commercial Code §2103, Civil Code §1791(b) and Health
27  and Safety Code §18002.3 respectively, of the subject "Goods" as defined in Commercial Code
28  §2105, Civil Code §1791(a).  The "Goods" are described more specifically as a "Manufactured

_____
Complaint for Damages                    -1-

                                                    Exhibit "A"

1    Home" within the meaning of Health and Safety Code §§ 18007 and 18009, and "Manufactured
2    home accessory buildings or structures," as set forth in Health and Safety Code §18008.5 and
3    purchased new from Defendant CAL-AM PROPERTIES, INC. named herein.

4        3.    At all times herein mentioned, the "manufactured home and manufactured home
5    accessory buildings or structures" (collectively referred to as "The Home") are a "New
6    Manufactured Home" as defined in Health and Safety Code §18009.

7        4.    At all times herein mentioned, Plaintiffs were consumers who purchased the
8    subject new manufactured home, accessory buildings and structures in good faith for personal
9    and family use.

10       5.    Plaintiffs are informed and believe, and on that basis allege, that Defendants
11   CAL-AM PROPERTIES, INC. and DOES 1 through 10 are, and at all times herein mentioned
12   were, corporations licensed to do business, and doing business, in the State of California.

13       6.    Plaintiffs are informed and believe, and on that basis allege that at all times herein
14   mentioned, Defendants CAL-AM PROPERTIES, INC. and DOES 11 through 20 are doing
15   business as "Dealers" as defined in Health and Safety Code §18002.6, "Licensees" as described
16   in Health and Safety Code §18006, "Retailers" as defined in Health and Safety Code §18012,
17   Civil Code §1791(l) and "Sellers" as set forth in Commercial Code §2103, respectively, of the
18   manufactured home and accessory buildings or structures.

19       7. Plaintiffs are informed and believe, and on that basis allege, that Defendants CAVCO
20   INDUSTRIES, INC. and DOES 21 through 30 are, and at all times herein mentioned were,
21   corporations licensed to do business, and doing business, in the state of California.

22       8. At all times herein mentioned, Defendants CAVCO INDUSTRIES, INC. (Hereinafter
23   "CAVCO") and DOES 21 through 30 manufactured the home and sold it to Defendant CAL-AM
24   PROPERTIES, INC. Defendants, CAVCO and DOES 21 through 30 are "manufacturers" within
25   the meaning of California Civil Code § 1791(j), California Health and Safety Code § 18006.3
26   and "sellers" as defined in California Commercial Code § 2103(d).

27       9.    At this time, Plaintiffs do not know the true names or capacities of the Defendants
28   that have been sued as DOES 1 through 100, and Plaintiffs therefore sue such Defendants by

---

Complaint for Damages                          -2-

1   such fictitious names. Plaintiffs believe that each of the Defendants designated by a fictitious

2   name is in some manner legally responsible for the events and happenings described in this

3   Complaint, and caused damages proximately and foreseeably to Plaintiffs as herein alleged.

4       10.   At all relevant times, each of the Defendants was the agent, servant, employee,

5   partner, aider and abetter, co-conspirator and/or joint venturer of each of the remaining

6   Defendants, and was at all times operating and acting within the purpose and scope of said

7   agency, service, employment, partnership, conspiracy and/or joint venture, and rendered

8   substantial assistance and encouragement to the other Defendants, knowing that their conduct

9   constituted a breach of duty to Plaintiff.

10      11.   On or about April 4, 2007, Plaintiffs entered into a written Manufactured Home

11  Purchase Agreement (Hereinafter "Agreement") to purchase a new 2007 CAVCO manufactured

12  home, Model DBS1386A, to be located at the Southlake Mobile Home Park, 148 Coleridge

13  Terrace, Fremont, CA 94538, from Defendants CAL-AM PROPERTIES, INC. and DOES 1

14  through 20. The purchase price of $170,507.00 (One hundred seventy thousand, five hundred

15  seven dollars and no cents) was to include certain manufactured home accessory buildings or

16  structures, upgrades, sales tax, foundation system, tie downs, delivery, setup, HCD fees, escrow

17  fees and document fees, but most of these included items were not itemized on the Purchase

18  Order as required by law. Plaintiffs are not experts in manufactured homes, home inspections or

19  construction and relied upon the representations of both Brian Pierce, as the Salesperson, and Joi

20  Gonzales as the Sales Manager for Defendant CAL-AM PROPERTIES, INC. to properly

21  construct, assemble, set up and install the new manufactured home properly and in accord with

22  applicable codes and regulations. Defendant certified on the Purchase Order that the home

23  would be properly installed by a qualified contractor and that the contractor would be ACI.

24      12.   Attached hereto as Exhibit 1 and incorporated by reference, as if fully set forth

25  herein, is a true and correct copy of the Manufactured Home Purchase Agreement.

26      13.   In agreeing to pay the monetary consideration and completing the purchase,

27  Plaintiffs understood and expected that the subject new manufactured home was free from

28  defects, and was designed, manufactured, assembled, constructed and installed in a workmanlike

1    manner. Had they known that the contrary was true, Plaintiffs would not have entered into the
2    Purchase Agreement and made the purchase from Defendants. Plaintiffs performed all of their
3    obligations under the purchase agreement as Defendant CAL-AM PROPERTIES, INC. was paid
4    in full for the home at the close of escrow on or about May 7, 2007.

5        14.    Plaintiffs took possession of the manufactured home after the closing of escrow
6    on or about May 7, 2007.

7        15.    Prior to taking possession of the manufactured home during the initial walk
8    through of the home, on or about April 9, 2007, Plaintiffs notified Defendant CAL-AM
9    PROPERTIES, INC., or its designated agents by telephone, in person, and in writing of certain
10   substantial defects in materials or workmanship such as broken, ripped, cracked, stained, or
11   missing parts or components as installed or manufactured by the contractor, dealer, or
12   manufacturer, in particular that the home was not properly assembled or installed as set forth in
13   paragraph 16, below.

14       16.    Beginning on or about October 20, 2007 and continuing thereafter, Plaintiffs hired
15   consultants and inspectors to explain the problems and discovered that the home was not
16   properly installed, the soils were not properly compacted, the grading does not allow for proper
17   drainage and water accumulates under the home. The ventilation and foundation system are
18   inadequate, specifically including defects in the installation of the home which, by engaging the
19   services of experts and consultants familiar with the construction and installation of
20   manufactured homes in this area, Plaintiffs are now informed that the subject manufactured home
21   was improperly designed, manufactured, assembled and installed. Plaintiffs have also discovered
22   through these experts and consultants, since October 20, 2007, that the probable cause of the
23   problems and defects in the subject home is because it is not properly assembled or installed,
24   lacks adequate support, lacks proper soils preparation, lacks proper soil compaction, lacks proper
25   site drainage, lacks proper grading, and lacks vapor barriers all of which have resulted in
26   consequential damages to various component elements of the structure. The home continues to
27   suffer ongoing consequential damages and progressive deterioration from the improper assembly
28   and installation by Defendants and/or their agents. Plaintiffs have now retained an independent

Complaint for Damages                          -4-

1  building inspector and an engineer to inspect the subject home and have discovered, and continue

2  to discover, various other defects in the design, manufacture, assembly, and installation of the

3  new manufactured home and components.

4      17.    Plaintiffs notified Defendants or their agents, including Plaintiffs' Salesperson

5  Brian Pierce, and Joi Gonzales, Sales Manager, of CAL-AM PROPERTIES, INC., Mike

6  Edwards, Service Manager for Defendant CAVCO, Dave Arbogast of ACI, Larry Reich of

7  Reich's Manufactured Home Installation, Inc. and Ron Van Wambeke of Rovan Construction

8  and all of them, orally and in writing, of the defective conditions from April 9, 2007 through the

9  date of the filing of this complaint, without satisfactory repairs.

10                        **FIRST CAUSE OF ACTION**

11  **(Breach of Contract - Manufactured Home Purchase Agreement)**
                **Against Defendant CAL-AM PROPERTIES, INC.**

12      18.    Plaintiffs hereby incorporate herein by reference as if fully set forth herein, each

13  and every allegation contained in Paragraphs 1 through 17, inclusive, of this Complaint.

14      19.    On or about April 4, 2007, Plaintiffs entered into a written Manufactured Home

15  Purchase Agreement (Hereinafter "Agreement") to purchase a new 2007 CAVCO manufactured

16  home, Model DBS1386A, to be located at the Southlake Mobile Home Park, 148 Coleridge

17  Terrace, Fremont, CA 94538, from Defendants CAL-AM PROPERTIES, INC. and DOES 1

18  through 20.  The purchase price of $170,507.00 (One hundred seventy thousand, five hundred

19  seven dollars and no cents) was to include certain manufactured home accessory buildings or

20  structures, upgrades, sales tax, foundation system, tie downs, delivery, setup, HCD fees, escrow

21  fees and document fees, but most of these included items were not itemized on the Purchase

22  Order as required by law.  Plaintiffs are not experts in manufactured homes, home inspections or

23  construction and relied upon the representations of both Brian Pierce, as the Salesperson, and Joi

24  Gonzales as the Sales Manager for Defendant CAL-AM PROPERTIES, INC. to properly

25  construct, assemble, set up and install the new manufactured home properly and in accord with

26  applicable codes and regulations.  Defendant certified on the Purchase Order that the home

27  would be properly installed by a qualified contractor and that the contractor would be ACI.

28

Complaint for Damages

20.     Attached hereto as Exhibit 1 and incorporated by reference, as if fully set forth herein, is a true and correct copy of the Manufactured Home Purchase Agreement.

21.     Defendants covenanted that the new manufactured home and accessory structures would be complete, of good quality, and free from faults and defects.

22.     Defendants breached said Contract in that the home and accessory structures are incomplete, do not comply with applicable codes, are unsafe and defective in their as built condition.

23.     Defendants also breached said Contract because the entire manufactured home and components are improperly installed, do not comply with applicable codes, and jeopardize the health and safety of occupants of the manufactured home.

24.     Beginning on or about October 20, 2007 and continuing thereafter, Plaintiffs hired consultants and inspectors to explain the problems and discovered that the home was not properly installed, the soils were not properly compacted, the grading does not allow for proper drainage and water accumulates under the home. The ventilation and foundation system are inadequate, specifically including defects in the installation of the home which, by engaging the services of experts and consultants familiar with the construction and installation of manufactured homes in this area, Plaintiffs are now informed that the subject manufactured home was improperly designed, manufactured, assembled and installed. Plaintiffs have also discovered through these experts and consultants, since October 20, 2007, that the probable cause of the problems and defects in the subject home is because it is not properly assembled or installed, lacks adequate support, lacks proper soils preparation, lacks proper soil compaction, lacks proper site drainage, lacks proper grading, and lack vapor barriers all of which have resulted in consequential damages to various component elements of the structure. The home continues to suffer ongoing consequential damages and progressive deterioration from the improper assembly and installation by Defendants and/or their agents. Plaintiffs have now retained an independent building inspector and an engineer to inspect the subject home and have discovered, and continue to discover, various other defects in the design, manufacture, assembly, and installation of the new manufactured home and components.

---

Complaint for Damages

25.    As a proximate result of the breach of Contract by Defendants, and each of them, Plaintiffs have suffered damages in excess of the jurisdictional limit of this Court including, but not limited to, the costs to repair the defective conditions; the cost to repair and replace property damaged by said defective conditions; diminution in the value of the manufactured home and accessory buildings; loss of full use and enjoyment of the manufactured home and accessory buildings; residual stigma damages; special damages; general damages; costs of experts and consultants retained to investigate the defective conditions; and, attorney's fees and costs incurred to pursue Plaintiffs' claims.

26.    Due to the fact that Plaintiffs will continue to suffer substantial and irreparable harm and injury under the Agreement if it is not rescinded in that, as a result of Defendants' conduct, Plaintiffs will be deprived of their bargain and will have a home that is substantially different from, and inferior to, the one they bargained and paid for and intended to purchase. On or about February 12, 2008, Plaintiffs served Defendants CAL-AM PROPERTIES, INC. and CAVCO with a Notice of Demand for Rescission and Restitution. A true and correct copy of the Notice is attached hereto as Exhibit 2. Defendants rejected and denied plaintiffs' Demand on March 14, 2008.

27.    Accordingly, Plaintiffs intend service of the summons and complaint in this action to serve as the second notice of rescission of the Agreement, and hereby demands that Defendants restore to them the consideration furnished by Plaintiffs, specifically the sum of $170,507.00 plus all costs incurred by Plaintiffs in connection with the purchase of the home, the value of any improvements made by Plaintiffs, any amounts expended by Plaintiffs in attempted repairs, before discovering that the defects in the home were more substantial than Plaintiffs realized, such that Plaintiffs would not have entered into the Agreement had Plaintiffs known of the nature and extent of such defects, less the reasonable value to the Plaintiffs of the use of the home, plus costs of experts and consultants, incidental expenses, and costs and attorneys' fees incurred herein.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Breach of Warranty)
### Against Defendants CAL-AM PROPERTIES, INC. and CAVCO INDUSTRIES, INC.
### Count 1 - Willful Violation of the Song-Beverly Consumer Warranty Act

28.    Plaintiffs hereby incorporate herein by reference as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 27, inclusive, of this Complaint.

29.    At the time of the purchase of the home, Defendant manufacturer CAVCO and Defendant Dealer CAL-AM PROPERTIES, INC., and its Salesperson Bruce Pierce, and Sales Manager Joi Gonzales, represented to Plaintiffs in a writing entitled "Mobilehome/Manufactured Home Warranty" that the home was "free from any substantial defects in materials or workmanship." In fact the subject home is substantially defective in that the home was not properly installed, the site was not properly graded for drainage and water accumulates under the home, the soils were not properly compacted, the interior walls are cracked, the floors are loose and not level due to improper set-up and the home suffers from a faulty foundation system.

30.    Beginning on or about October 20, 2007 and continuing thereafter, Plaintiffs hired consultants and inspectors to explain the problems and discovered that the home was not properly installed, the soils were not properly compacted, the grading does not allow for proper drainage and water accumulates under the home. The ventilation and foundation system are inadequate, specifically including defects in the installation of the home which, by engaging the services of experts and consultants familiar with the construction and installation of manufactured homes in this area, Plaintiffs are now informed that the subject manufactured home was improperly designed, manufactured, assembled and installed. Plaintiffs have also discovered through these experts and consultants, since October 20, 2007, that the probable cause of the problems and defects in the subject home is because it is not properly assembled or installed, lacks adequate support, lacks proper soils preparation, lacks proper soil compaction, lacks proper site drainage, lacks proper grading, and lacks vapor barriers all of which have resulted in consequential damages to various component elements of the structure. The home continues to suffer ongoing consequential damages and progressive deterioration from the improper assembly and installation by Defendants and/or their agents. Plaintiffs have now retained an independent

1   building inspector and an engineer to inspect the subject home and have discovered, and continue

2   to discover, various other defects in the design, manufacture, assembly, and installation of the

3   new manufactured home and components.

4      31.     These defects and the cause of the defects were known and evident to Defendants

5   and their agents, employees, contractors, and warranty contractors when they inspected the home

6   beginning on April 9, 2007 and continuing thereafter until the filing of this action but the

7   information on the cause of the defects was withheld from Plaintiffs until Plaintiffs were forced

8   to retain their own consultants and experts in October 2007. Since October 2007, Plaintiffs have

9   discovered that the problems and defects are actually caused by the improper site preparation,

10   set-up, assembly and installation of the home. Accordingly, unless the homesite and foundation

11   systems are repaired or replaced, the home will continue to suffer consequential damages, and

12   deterioration which are cumulative and ongoing.

13      32.     Plaintiffs are informed and believe and thereon allege that the above-mentioned

14   representation that the home was "free from any substantial defects in material or workmanship,"

15   was intended by Defendants to result in the above-mentioned sale of the manufactured home to

16   Plaintiffs, and Plaintiffs allege that the above-mentioned purchase of the manufactured home was

17   made in reliance on, and as a result of, the representations of Defendants that such manufactured

18   home was "free from any substantial defects in materials or workmanship" and that the

19   Defendants further certified to Plaintiffs that the home would be properly set-up, installed, and

20   assembled by a licensed and qualified contractor that being ACI.

21      33.     Plaintiffs are informed and believe and thereon allege that the above-mentioned

22   misrepresentations were willful and intentional violations of the provisions of the Health &

23   Safety Code §18004.6 and §18035.3, the Song-Beverly Consumer Warranty Act, Civil Code,

24   §1790 *et seq.*, not the result of a bona fide error notwithstanding the use of reasonable procedures

25   adopted to avoid any such error.

26      34.     That instead of performing the appropriate and necessary repairs to correct,

27   replace, or otherwise rectify the substantial defects in the materials and workmanship,

28   construction, installation, and assembly of the subject manufactured home, Defendants or their

Complaint for Damages           -9-

1  agents or employees attempted to blame Plaintiffs or others in an effort to appease Plaintiffs and,
2  at the same time, to disguise and conceal from Plaintiffs the actual cause of these defects, which
3  is the improper site preparation, construction, installation, and assembly of the subject
4  manufactured home.

5     35.    Defendants, CAL-AM PROPERTIES, INC. and CAVCO or their agents have
6  unsuccessfully repaired or attempted to repair the home and continuously promised to repair the
7  manufactured home, thereby tolling the running of the statutory warranty accompanying the sale
8  of the manufactured home, accessories and structures pursuant to Civil Code §§ 1795.6 and
9  1795.7.

10    36.    Plaintiffs are informed and believe and thereon allege that at the time of sale of
11  the manufactured home and accessory structures, Defendants CAL-AM PROPERTIES, INC. and
12  CAVCO expressly warranted that the manufactured homes and accessory structures were fit for
13  their intended use as a residence and were free of latent and concealed defects.

14    37.    Plaintiffs are informed and believe and thereon allege that said warranties were
15  false and untrue in that the damages and substantial defects listed in this Complaint have
16  surfaced and are continuing and cumulative and that Defendants CAL-AM PROPERTIES, INC.
17  and CAVCO , and DOES ONE THROUGH TWENTY-ONE, willfully violated the Song-
18  Beverly Consumer Warranty Act which entitles Plaintiffs to a civil penalty of two (2) times the
19  amount of actual damages.

20    38.    As a proximate result of the Breach of Warranty by Defendants, and each of them
21  Plaintiffs have suffered damages in excess of the jurisdictional limit of this Court including, but
22  not limited to, money expended on the purchase of the home, plaintiffs seek a full refund of the
23  costs incurred in the purchase of the home and all other costs and expenses incidental thereto, the
24  costs to repair the defective conditions; diminution in the value of the manufactured home and
25  accessory buildings; loss of full use and enjoyment of the manufactured home and accessory
26  buildings; residual stigma damages; special damages; general damages; costs of experts and
27  consultants retained to investigate the defective conditions; and attorney's fees and costs incurred
28  to pursue Plaintiffs' claims.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

**Count 2 – Breach of the Implied Warranty of Merchantability,
Song-Beverly Consumer Warranty Act**

39.    Plaintiffs reallege and incorporate by reference herein each and every allegation set forth in paragraphs 1 through 38.

40.    Plaintiffs purchased the new 2007 CAVCO manufactured home with the reasonable expectation that the home was fit to be used for the ordinary and intended purpose of providing Plaintiffs with a reliable and safe home for habitation.  Defendants CAL-AM PROPERTIES, INC. and CAVCO knew when the home was manufactured, assembled, installed and sold, that the home's intended and ordinary purpose was to provide its owner with a reliable and safe home for habitation.

41.    At all times that Plaintiffs have had possession of the subject home, Plaintiffs used it for the intended and ordinary purpose of habitation for their family's personal and family use.

42.    However, the home is not fit for the ordinary purposes for which it was sold.  It is in fact defective, as set forth above, and not fit to provide Plaintiffs with a dependable, safe home for habitation.

43.    As a direct and proximate result of Defendant's violation of their obligations under the Song-Beverly Consumer Warranty Act, Plaintiffs have suffered actual, consequential and incidental damages, and are entitled to reject the home and demand a refund, including but not limited to money expended on the purchase of the home, lost interest, damages associated with the inconvenience suffered as a result of the failure of the home to perform properly, the loss of use of the home during at the time it will require for repairs, the cost of repairs related to these defects, loss of wages, other incidental and consequential damages, and costs and attorney's fees which Plaintiffs have incurred and will continue to incur in order to protect their rights in this matter.  The precise amount of these damages is unknown at the present time.  Attorney's fees, costs, loss of use, interest and other damages continue to accrue.

44.    Under California Civil Code §1794(d), Plaintiffs are also entitled to recover a sum

1  equal to the aggregate amount of their costs and expenses, including attorney's fees. As a

2  proximate result of Defendants' misconduct as alleged herein, and in an effort to protect their

3  rights, Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection

4  therewith.

5      WHEREFORE, Plaintiffs pray for judgment including actual damages as established

6  according to proof at trial pursuant to Civil Code §1794, attorney's fees and costs, and such other

7  relief as hereinafter set forth.

8          **Count 3 - Violation of the Magnuson-Moss Warranty Act**

9      45.    Plaintiffs reallege and incorporate by reference as though fully set forth herein

10  each and every allegation contained in paragraphs 1 through 44, inclusive.

11     46.    Plaintiffs are a "consumer" as defined in the Magnuson-Moss Warranty Act

12  (hereinafter to as "Warranty Act," 15 U.S.C. §2301(3).

13     47.    Defendants CAL-AM PROPERTIES, INC. and CAVCO and DOES 1 through

14  100 are "suppliers"or "warrantors" as defined in the Warranty Act, 15 U.S.C. §2310(4) and (5).

15  Plaintiffs are informed and believe, and thereupon allege, that DOES 1 through 5 are "suppliers"

16  or "warrantors" as defined in the Warranty Act.

17     48.    The manufactured home herein above described is a "consumer product" as

18  defined in the Warranty Act, 15 U.S.C. §2301(1) because it is normally used for personal or

19  household purposes.

20     49.    The express warranty more fully described herein above pertaining to the

21  manufactured home is a "written warranty" as defined in the Warranty Act, 15 U.S.C. §2301(6).

22  Under California law there was created in connection with the purchase of the home an implied

23  warranty of merchantability.

24     50.    The actions of Defendants as herein above described, in failing to tender the

25  manufactured home to Plaintiffs free of defects and refusing to properly repair or replace the

26  defective manufactured home tendered to Plaintiffs, or to refund the purchase price to Plaintiffs,

27  constitute breach of the written and implied warranties covering the manufactured home and

28  hence violation of the Magnuson-Moss Act.

Complaint for Damages                           -12-

51.     Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranties, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

52.     As a direct and proximate result of the acts and omissions of Defendants as set forth above, Plaintiffs have been damaged in an amount in excess of the jurisdictional limit of the Court.

53.     The Magnuson-Moss Warranty Act, 15 U.S.C. §2310(d)(2), entitles Plaintiffs to recover as part of the judgment costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein and in an effort to protect their rights, Plaintiffs have incurred and continues to incur legal fees, costs and expenses.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION
#### (Negligence)
**Against Defendants CAL-AM PROPERTIES, INC. and CAVCO**

54.     Plaintiffs hereby incorporate herein by reference as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 53, inclusive, of this Complaint.

55.     As a separate cause of action against all Defendants, Plaintiffs allege that Defendants owed a duty to Plaintiffs to exercise ordinary care in performing their respective functions, duties, responsibilities, work and services in the design, site preparation, soils compaction, grading, installation, construction, assembly, manufacture and sale of the manufactured home, components, and accessory structures.

56.     Beginning on or about October 20, 2007 and continuing thereafter, Plaintiffs hired consultants and inspectors to explain the problems and discovered that the home was not properly installed, the soils were not properly compacted, the grading does not allow for proper drainage and water accumulates under the home. The ventilation and foundation system are inadequate, specifically including defects in the installation of the home which, by engaging the services of experts and consultants familiar with the construction and installation of manufactured homes in this area, Plaintiffs are now informed that the subject manufactured home

Complaint for Damages

1  was improperly designed, manufactured, assembled and installed. Plaintiffs have also discovered

2  through these experts and consultants, since October 20, 2007, that the probable cause of the

3  problems and defects in the subject home is because it is not properly assembled or installed,

4  lacks adequate support, lacks proper soils preparation, lacks proper soil compaction, lacks proper

5  site drainage, lacks proper grading, and lacks vapor barriers all of which have resulted in

6  consequential damages to various component elements of the structure. The home continues to

7  suffer ongoing consequential damages and progressive deterioration from the improper assembly

8  and installation by Defendants and/or their agents. Plaintiffs have now retained an independent

9  building inspector and an engineer to inspect the subject home and have discovered, and continue

10  to discover, various other defects in the design, manufacture, assembly, and installation of the

11  new manufactured home and components.

12      57.    Defendants breached their duties of care to Plaintiffs by failing and neglecting to

13  perform their functions, duties, responsibilities, work and services in connection with the design,

14  site preparation, grading, soils compaction, installation, construction, assembly, manufacture and

15  sale of the subject manufactured home, and components and accessory structures, in that they are

16  adversely affected by the defective conditions described in this Complaint, among others.

17      58.    As a direct and proximate result of Defendants' negligence and carelessness and

18  the defective conditions described herein, Plaintiffs have suffered damages in excess of the

19  jurisdictional limit of this Court including, but not limited to, loss of money expended on the

20  purchase of the home, lost interest, the costs to repair the defective conditions; the cost to repair

21  and replace property damaged by said defective conditions; diminution in the value of the

22  manufactured home and accessory buildings; special damages, general damages; loss of full use

23  and enjoyment of the manufactured home and accessory buildings; residual stigma damages;

24  costs of experts and consultants retained to investigate the defective conditions; and costs

25  incurred to pursue Plaintiffs' claims.

26      WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

27

28

1

## FOURTH CAUSE OF ACTION
### (Misrepresentation)
### FIRST COUNT
### (Intentional Misrepresentation)
### Against Defendant CAL-AM PROPERTIES, INC.

2

3

4      59.    Plaintiffs hereby incorporate herein by reference, as if fully set forth herein, each

5   and every allegation contained in Paragraphs 1 through 58, inclusive, of this Complaint.

6      60.    At all times herein mention Defendant CAL-AM PROPERTIES, INC., was and

7   now is a manufactured home Dealer duly licensed as such by the State of California, Department

8   of Housing and Community Development.

9      61.    At all times herein mentioned, the Defendant Dealer, CAL-AM PROPERTIES,

10  INC. employed Brian Pierce as the Salesperson and Joi Gonzales as the Sales Manager of the

11  Defendant Dealer CAL-AM PROPERTIES, INC. and at all times herein mentioned, in doing the

12  things and in making the representations herein alleged, they were acting in the course and scope

13  of their employment or agency, and with the knowledge and consent of their principal.

14     62.    On or about April 4, 2007, in Alameda County, California, Plaintiffs entered into a

15  written agreement with Defendant CAL-AM PROPERTIES, INC. by and through Defendant's

16  Salesperson Brian Pierce and Sales Manager Joi Gonzales to purchase the above-described

17  manufactured home, a copy of which agreement is attached hereto as Exhibit 1 and made a part

18  hereof.

19     63.    At the time of the purchase of the home, Defendant CAL-AM PROPERTIES,

20  INC. Dealer and its Salesperson Brian Pierce represented to Plaintiffs in a writing entitled

21  "Mobilehome/Manufactured Home Warranty" that the home was "free from any substantial

22  defects in materials or workmanship." At the time of the sale of the home, both Salesperson

23  Brian Pierce and Sales Manager Joi Gonzales represented, orally and on the Purchase Order, that

24  the subject home had 1,508 square feet of living area when the home only has 1,386 square feet

25  of living area. At the time of the sale of the home, Salesperson Brian Pierce also represented to

26  Plaintiffs that the new home would be constructed with cement board exterior siding and

27  skirting, that the cement block stem walls would be constructed the full length of the home, that

28  the home would be supported by large steel adjustable piers, that the home would be constructed

---

Complaint for Damages                    -15-

1    so that water would not accumulate under the home, that the home site would be properly graded
2    and sloped for drainage,  that issues with the interior paint, cabinets and caulk on the exterior
3    siding would be properly repaired under warranty.  The Anderson's were also promised an
4    extended 5 year warranty.  The Anderson's relied upon these representations in purchasing the
5    new home and in allowing the various contractors to attempt repairs under the basic warranty.
6    Plaintiffs are not experts in manufactured homes, manufactured home sales or escrows,
7    manufactured home warranties, home inspections, or construction and relied upon the
8    representations of Brian Pierce as Plaintiffs' Salesperson and Joi Gonzales as the Sales Manager
9    for Defendant CAL-AM PROPERTIES, INC. to properly order, design, construct, assemble, set
10   up and install the new manufactured home properly and in accord with the Purchase Agreement
11   and representations to Plaintiffs, as well as all applicable codes and regulations.  Plaintiffs hired
12   consultants and inspectors to explain the problems and discovered that the continuous and
13   cumulative problems with interior cracks and unlevel floors are due to improper site preparation
14   and defective foundation systems installed for the new manufactured home.  The site and
15   foundation system are inadequate, specifically including defects in the installation of the home
16   which, by engaging the services of experts and consultants familiar with the construction and
17   installation of manufactured homes in this area, Plaintiffs are now informed that the subject
18   manufactured home was improperly designed, manufactured, assembled and installed.  Plaintiffs
19   have also discovered through these experts and consultants, since October 2007, that the
20   probable cause of the problems and defects in the subject home is because it is not properly
21   assembled or installed, lacks adequate support, lacks proper soils preparation, lacks proper soils
22   compaction, lacks proper site drainage and lacks vapor barriers all of which have resulted in
23   consequential damages to various component elements of the structure.  The home continues to
24   suffer ongoing consequential damages and progressive deterioration from the improper assembly
25   and installation by Defendants and/or their agents. Plaintiffs have now retained an independent
26   building inspector and an engineer to inspect the subject home and have discovered, and continue
27   to discover, various other defects in the design, manufacture, assembly, and installation of the
28   new manufactured home and components.

64.    Plaintiffs are informed and believe and thereon allege that the above-mentioned misrepresentations were intended by Defendant CAL-AM PROPERTIES, INC. through its Salesperson Brian Pierce and Sales Manager Joi Gonzales to result in the above-mentioned sale of the manufactured home to Plaintiffs, and the above-mentioned purchase of the manufactured home was made in reliance on, and as a result of, the representations of Defendants that such manufactured home was free from any substantial defects in materials or workmanship and that the Defendants certified to Plaintiffs that the home would be properly set-up, installed, and assembled by a licensed and qualified contractor, specifically ACI, and that at the time of the purchase of the home, Defendant CAL-AM PROPERTIES, INC., Dealer and its Salesperson Brian Pierce and Sales Manager Joi Gonzales represented to Plaintiffs in a writing entitled "Mobilehome/Manufactured Home Warranty" that the home was "free from any substantial defects in materials or workmanship" and that the home had 1,508 square feet of living area when the home only has 1,386 square feet of living area. Salesperson Brian Pierce also represented to Plaintiffs that the home site would be properly graded and sloped for drainage. Plaintiffs are not experts in manufactured homes, manufactured home sales or escrows, manufactured home warranties, home inspections, or construction and relied upon the representations of Brian Pierce as Plaintiffs' Salesperson and Sales Manager Joi Gonzales for Defendant CAL-AM PROPERTIES, INC. to properly order, design, construct, assemble, set up and install the new manufactured home properly and in accord with the Purchase Agreement and representations to Plaintiffs, as well as all applicable codes and regulations. Plaintiffs hired consultants and inspectors to explain the problems and discovered that the continuous and cumulative problems with interior cracks and unlevel floors are due to improper site preparation and defective foundation systems installed for the new manufactured home. The site and foundation system are inadequate, specifically including defects in the installation of the home which, by engaging the services of experts and consultants familiar with the construction and installation of manufactured homes in this area, Plaintiffs are now informed that the subject manufactured home was improperly designed, manufactured, assembled and installed. Plaintiffs have also discovered through these experts and consultants, since October 2007, that the

1 probable cause of the problems and defects in the subject home is because it is not properly

2 assembled or installed, lacks adequate support, lacks proper soils preparation, lacks proper

3 compaction, lacks proper site drainage and lacks vapor barriers all of which have resulted in

4 consequential damages to various component elements of the structure. The home continues to

5 suffer ongoing consequential damages and progressive deterioration from the improper assembly

6 and installation by Defendants and/or their agents. Plaintiffs have now retained an independent

7 building inspector and an engineer to inspect the subject home and have discovered, and continue

8 to discover, various other defects in the design, manufacture, assembly, and installation of the

9 new manufactured home and components.

10    65.    At the time of the purchase of the home, Defendant CAL-AM PROPERTIES,

11 INC. Dealer and its Salesperson Brian Pierce represented to Plaintiffs in a writing entitled

12 "Mobilehome/Manufactured Home Warranty" that the home was "free from any substantial

13 defects in materials or workmanship." At the time of the sale of the home, Salesperson Brian

14 Pierce also represented to Plaintiffs that the new home would be constructed with cement board

15 exterior siding and skirting, that the cement block stem walls would be constructed the full length

16 of the home, that the home would be supported by large steel adjustable piers, that the home

17 would be constructed so that water would not accumulate under the home, that the home site

18 would be properly graded and sloped for drainage,  that issues with the interior paint, cabinets

19 and caulk on the exterior siding would be properly repaired under warranty. The Anderson's

20 were also promised an extended 5 year warranty. The Anderson's relied upon these

21 representations in purchasing the new home and in allowing the various contractors to attempt

22 repairs under the basic warranty.    Plaintiffs are not experts in manufactured homes,

23 manufactured home sales or escrows, manufactured home warranties, home inspections, or

24 construction and relied upon the representations of Brian Pierce as Plaintiffs' Salesperson for

25 Defendant CAL-AM PROPERTIES, INC. to properly order, design, construct, assemble, set up

26 and install the new manufactured home properly and in accord with the Purchase Agreement and

27 representations to Plaintiffs, as well as all applicable codes and regulations.  Plaintiffs hired

28 consultants and inspectors to explain the problems and discovered that the continuous and

1  cumulative problems with interior cracks and unlevel floors are due to improper site preparation
2  and defective foundation systems installed for the new manufactured home. The site and
3  foundation system are inadequate, specifically including defects in the installation of the home
4  which, by engaging the services of experts and consultants familiar with the construction and
5  installation of manufactured homes in this area, Plaintiffs are now informed that the subject
6  manufactured home was improperly designed, manufactured, assembled and installed. Plaintiffs
7  have also discovered through these experts and consultants, since October 2007, that the
8  probable cause of the problems and defects in the subject home is because it is not properly
9  assembled or installed, lacks adequate support, lacks proper soils preparation, lacks proper soils
10  compaction, lacks proper site drainage and lacks vapor barriers all of which have resulted in
11  consequential damages to various component elements of the structure. The home continues to
12  suffer ongoing consequential damages and progressive deterioration from the improper assembly
13  and installation by Defendants and/or their agents. Plaintiffs have now retained an independent
14  building inspector and an engineer to inspect the subject home and have discovered, and continue
15  to discover, various other defects in the design, manufacture, assembly, and installation of the
16  new manufactured home and components.

17       66.    Plaintiffs are informed and believe and thereon allege that the above-mentioned
18  misrepresentations were willful and intentional violations of the provisions of the Health &
19  Safety Code §18004.6 and §18035.3, and the Song-Beverly Consumer Warranty Act, Civil Code
20  §1790 et seq., not the result of a bona fide error notwithstanding the use of reasonable procedures
21  adopted to avoid any such error.

22       67.    That instead of performing the appropriate and necessary repairs to correct,
23  replace, or otherwise rectify the above misrepresentations and overcharges and the substantial
24  defects in the materials and workmanship, installation, and assembly of the subject manufactured
25  home, Defendants or their agents or employees attempted to blame the Plaintiffs or others in an
26  effort to appease Plaintiffs and, at the same time, to disguise and conceal from Plaintiffs the true
27  facts and the actual cause of these defects, which is the improper site preparation, installation,
28  and assembly of the subject manufactured home.

68.    Defendant CAL-AM PROPERTIES, INC., by and through its Salesperson Brian Pierce and Sales Manager Joi Gonzales, knew when they made these representations concerning the various specifications and requested accessories or upgrades, as well as the quality of the manufactured home, and that the installation contractor was certified by Defendant, to Plaintiffs that these representations were false, and Defendant made the representations with the intent to deceive Plaintiffs and to induce Plaintiffs to take the actions herein alleged and with the intent to prevent Plaintiffs from further inquiring into the various specifications and requested accessories or upgrades, as well as quality of the manufactured home or qualifications of the installation contractor.

69.    Plaintiffs believed these representations of Defendant CAL-AM PROPERTIES, INC. through its Salesperson Brian Pierce and Sales Manager Joi Gonzales, to be true, and in reliance on these representations Plaintiffs were induced to complete the purchase, via close of escrow, of the above-described manufactured home on May 7, 2007, at a cost of $170,507.00. Plaintiffs would not have purchased the manufactured home herein described and would not have expended the sums herein alleged for the specified upgrades and improvements on the home if they had not relied on these representations by Defendants, CAL-AM PROPERTIES, INC. through its Salesperson Bruce Pierce and Sales Manager Joi Gonzales.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SECOND COUNT
### (Negligent Misrepresentation)

70.    Plaintiffs hereby incorporate herein by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 69, inclusive, of this Complaint.

71.    Defendant CAL-AM PROPERTIES, INC. through its Salesperson Brian Pierce and Sales Manager Joi Gonzales, when they made these representations concerning the various specifications and requested accessories or upgrades, as well as the quality of the home and qualifications of the installation contractor to Plaintiffs had no reasonable ground for believing that the representations were true, and Defendants, and each of them, made the representations with the intent to induce Plaintiffs to take the actions herein alleged, and with the intent to

1    prevent Plaintiffs from further inquiring into the various specifications and requested accessories

2    or upgrades, as well as the quality of the home and qualifications of the installation contractor.

3        WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

**THIRD COUNT**
**(Suppression of Fact)**

4

5    72.    Plaintiffs refer to and incorporate, as though fully set forth herein, Paragraphs 1

6    through 71, inclusive, of the First Count and Second Count.

7        73.    On or about July 2007 and continuing through February 2008, Defendant Dealer

8    CAL-AM PROPERTIES, INC., it's Salesperson Brian Pierce and Sales Manager Joi Gonzales,

9    and it's agents, employees, and warranty contractors represented to Plaintiffs that they would

10    receive a quality manufactured home, that would be free from substantial defects and

11    workmanship, which would be properly installed by a qualified, licensed and certified contractor,

12    and that any problems or defects with the subject manufactured home would be covered,

13    repaired, replaced, or otherwise rectified by Defendant CAL-AM PROPERTIES, INC., it's

14    agents, employees, and warranty contractors.

15        74.    That instead of performing the appropriate and necessary repairs to correct,

16    replace, or otherwise rectify the substantial defects in the materials and workmanship,

17    installation, and assembly of the subject manufactured home, Defendants or their agents or

18    employees attempted to blame the Plaintiffs or others in an effort to appease Plaintiffs and, at the

19    same time, to disguise and conceal from Plaintiffs the actual cause of these defects, which is the

20    improper site preparation, installation, and assembly of the subject manufactured home.

21        75.    Defendants, and each of them, failed to disclose and suppressed the material facts

22    and important of information herein alleged with the intent to induce Plaintiffs to act in the

23    manner herein alleged in reliance thereon, and with the intent to prevent Plaintiffs from further

24    inquiring into the quality of the manufactured home or the qualifications of the installation

25    contractor.

26        76.    As a proximate result of the misrepresentations by Defendants, Plaintiffs have

27    suffered damages in excess of the jurisdictional limit of this Court including, but not limited to,

28    the costs to repair the defective conditions; diminution in the value of the manufactured home

1    and accessory buildings; loss of full use and enjoyment of the manufactured home and accessory

2    buildings; residual stigma damages; special damages; general damages; costs of experts and

3    consultants retained to investigate the defective conditions; and attorney's fees and costs incurred

4    to pursue Plaintiffs' claims.

5       WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

6                   **PRAYER**

7      WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

8          1.     On the First Cause of Action, Plaintiffs pray for judgment against Defendants as

9    follows:

10            a.     For rescission of the Purchase Agreement and restitution to Plaintiffs

11    according to proof, but in no event an amount less than $204,716.00;

12            b.     Special and general damages according to proof;

13            c.     Pre- and post-judgment interest at the rate of 10% from May 7, 2007;

14            d.     Costs of suit incurred herein;

15            e.     For attorney's fees;

16            f.     For consultants' and experts' fees; and,

17            g.     For such other relief as the Court may deem proper.

18          2.     On the Second Cause of Action Plaintiffs pray for judgment against Defendants as

19    follows:

20            a.     Special and general damages according to proof;

21            b.     Pre- and post-judgment interest at the rate of 10% from May 7, 2007;

22            c.     Costs of suit incurred herein;

23            d.     For reasonable attorneys' fees;

24            e.     For consultants' and experts' fees;

25            f.     Under Court One for a civil penalty of two times Plaintiffs' actual

26                 damages; and,

27            g.     For such other relief as the Court may deem proper.

28          3.     On the Third Cause of Action Plaintiffs pray for judgment against Defendants as

   follows:

1        a.       Special and general damages according to proof;

2        b.       Pre- and post-judgment interest at the rate of 10% from May 7, 2007;

3        c.       Costs of suit incurred herein; and,

4        d.       For such other relief as the Court may deem proper.

5      4.      On the Fourth Cause of Action Plaintiffs pray for judgment against Defendants as

6 follows:

7        a.       Special and general damages according to proof;

8        b.       For punitive or exemplary damages according to proof;

9        c.       Pre- and post-judgment interest at the rate of 10% from May 7, 2007;

10       d.       Costs of suit incurred herein;

11       e.       For reasonable attorneys' fees;

12       f.       For consultants' and experts' fees; and,

13       g.       For such other relief as the Court may deem proper.

14

15 DATED: April 28, 2008          GREENE, CHAUVEL, DESCALSO & MINOLETTI

16

17                By: _Paul G. Minoletti_

18                    PAUL G. MINOLETTI
                           BRANDON L. REEVES

19                       Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

...A PROPERTIES, INC.
on Karman Ave., Suite 725
Irvine, CA 92612
Phone: (949) 222-5600
DL 1156859

SOUTHLAKE MHP # 128
4343 Auto Mall Parkway
Fremont, CA 94538
Phone: (510) 651-0990

1073429

NOTICE: THIS FORM IS COPYRIGHTED AND REPRODUCTION OF ALL OR PART IS STRICTLY FORBIDDEN.

# MANUFACTURED HOME PURCHASE ORDER AND FEDERAL DISCLOSURE STATEMENT

PURCHASER: *Michael Todd Anderson / Beryl Joyce Anderson*
ADDRESS: *38021 Dundee Commons*                                          DATE: *4/6/07*
CITY: *Fremont*          STATE: *CA*   ZIP: *94538*   SALESPERSON: *Brian Price*   PHONE: *510-793-0457*

Subject to the terms and conditions stated on both sides of this agreement Seller agrees to sell and Purchaser agrees to purchase the following MFD./MBL. Home:

| MAKE: *CAYCO* | MODEL: *DBS1386A* | B ROOMS: *3* | APPROX (INCL TOW BAR/EAVES) *L 58  W 26* | ☒ NEW ☐ USED | SITUS: *716 Coleridge Terrace* |

SERIAL NUMBER: *VAZ20608178XU*   APPROX DEL DATE: *01/01/00*   HUD OR HCD NO: *AR235586*   DT OF MFG: *8/9/07*   *Fremont CA 94538*

THE COST OF THE MFD./MBL HOME EXCLUDES THE LISTED PRICES FOR THESE ITEMS
NO. TOW BARS: *2*   WHEELS: *2*   WHEEL HUBS: *2*   TIRES: *2*   MFD. HOME PRICE $ *169,900.00*

ITEMIZED ACCESSORIES AND THEIR COSTS: (SEE ADDENDUMS)
*Home Complete As Viewed*
*Subject to Park Approval*
*Any Additional Charges or Alterations At Buyers Expense*
*Estimated Delivery May 7, 2007*

USED HOME SALES TAX, IF ANY, (1ST SOLD PRIOR TO 7/80) $

| | |
|---|---|
| TOTAL ACCESSORIES (OUTSIDE HOME) | $ *Included* |
| TOTAL MFG. HOME & ACCESSORIES | $ *169,900.00* |
| SALES TAX (ITEMS NOT INTEGRAL TO HOME) | $ |
| FOUNDATION SYSTEM / TIE DOWNS | $ *Included* |
| DELIVERY | $ *Included* |
| SET UP | $ *Included* |
| HCD FEES | $ *82.00* |
| INSURANCE PREMIUM (ONLY IF SOLD BY DEALER) | $ |
| ESCROW FEES | $ *500.00* |
| SCHOOL FEES | $ |
| OTHER / PRE PAID TAXES | $ |
| DOC. FEE (NOT A GOVERNMENTAL CHARGE) | $ *25.00* |
| **1. TOTAL CASH PRICE** | $ *170,507.00* |

## DESCRIPTION OF TRADE-IN

| MODEL | | BEDROOMS |
|---|---|---|
| NO. | SERIAL NO | |
| | COLOR | |
| AMT OWING | ACCOUNT NO | |

...HOM:
...RESS/PHONE

...ANUFACTURER STATES THAT INSULATION HAS BEEN INSTALLED IN THIS HOME
...LOWS: (NEW ONLY)

| | TYPE | THICKNESS | R FACTOR |
|---|---|---|---|
| | *Cellulose* | *10.81* | *40* |
| ...OR WALLS | *Fiberglass* | *6* | *19* |
| | *Fiberglass* | *3 1/2* | *22* |

...ING — Unless a charge is included in this Agreement for Public
...y or Property Damage Insurance, Payment for such Coverage
...provided by this agreement.

*...dealer is also licensed as a real estate broker, the sale of*
*...nufactured home or mobilehome being installed on a*
*...ation system pursuant to Section 18551 may be*
*...ed in the purchase document for the underlying real*
*...rty, provided that the requirements of HSC SEC.*
*...3 are met."*

| | |
|---|---|
| ALLOWANCE ON TRADE-IN $ | |
| LESS BAL DUE ABOVE | $ |
| NET ALLOWANCE | $ |
| PAID HEREWITH | $ |
| CASH BEFORE DEL. | $ |
| DESIGNATED DEPOSIT (INC. IN DN. PMT) | $ |
| **2. LESS BUYERS DOWN PAYMENT** | $ *1,000.00* |
| **3. UNPAID BAL. ON CASH SALES PRICE** | $ *169,507.00* |
| **4. FINANCE CHARGE** | $ |
| **5. ANNUAL PERCENTAGE RATE** | *N/A* % |
| **6. TOTAL PAYMENT AMOUNT** (3+4) | $ |
| **7. UNPAID BALANCE DUE PRIOR TO DEL.** | $ |
| **8. TOTAL DEFERRED PAYMENT PRICE** (2+6) | $ |

PAYABLE AS FOLLOWS:
*CASH SALE - on or before May 7, 2007*

## THE DEALER CERTIFIES THAT THE INSTALLATION CONTRACTOR IS:

*ACI*                         LIC. # *871011*
...SS ADDRESS *498 Platt Circle*
...Dorado H.LS   CA  ZIP *95762*

...ctor is required by law to be licensed and regulated by the
...rs State License Board

In the event the manufactured home cannot be delivered "and/or" inspection completed within the agreed delivery time due to nonperformance by the buyer, buyer agrees to one of the following at the option of the seller, either (1) to pay $ charges per day until a manufactured ho...

| | |
|---|---|
| TOTAL ACCESSORIES (OUTSIDE HOME) | $ *Included* |
| TOTAL MFG. HOME & ACCESSORIES | $ 169,900 |
| SALES TAX (ITEMS NOT INTEGRAL TO HOME) | $ *Included* |
| FOUNDATION SYSTEM / TIE DOWNS | $ |
| DELIVERY | $ *Included* |
| SET UP | $ *Included* |
| HCD FEES | $ 82.00 |
| INSURANCE PREMIUM (ONLY IF SOLD BY DEALER) | $ |
| ESCROW FEES | $ 500.00 |
| SCHOOL FEES | $ |
| OTHER / PRE PAID TAXES | $ |
| DOC. FEE (NOT A GOVERNMENTAL CHARGE) | $ 25.00 |
| 1. TOTAL CASH PRICE | $ 170,507.00 |

**DESCRIPTION OF TRADE-IN**

MAKE _____ MODEL _____ BEDROOMS _____
TITLE NO. _____ SERIAL NO. _____ COLOR _____
AMOUNT OWING _____ ACCOUNT NO. _____
TO WHOM: _____
ADDRESS/PHONE _____

THE MANUFACTURER STATES THAT INSULATION HAS BEEN INSTALLED IN THIS HOME AS FOLLOWS: (NEW ONLY)

| | TYPE | THICKNESS | R-FACTOR |
|---|---|---|---|
| ROOF | Cellulose | 10.8" | 40 |
| EXTERIOR WALLS | Fiberglass | 6 | 19 |
| FLOOR | Fiberglass | 3 1/2 | 22 |

WARNING – Unless a charge is included in this Agreement for Public Liability or Property Damage Insurance, Payment for such Coverage is not provided by this agreement.

If the dealer is also licensed as a real estate broker, the sale of manufactured home or mobilehome being installed on a foundation system pursuant to Section 18551 may be included in the purchase document for the underlying real property, provided that the requirements of HSC SEC. 18035.3 are met."

THE DEALER CERTIFIES THAT THE INSTALLATION CONTRACTOR IS:
NAME ACI  LIC. # 871077
BUSINESS ADDRESS 498 Platt Circle
CITY El Dorado Hills  CA  ZIP 95762

Contractor is required by law to be licensed and regulated by the Contractors State License Board, P.O. Box 26000 Sacramento, CA 95827.

| | |
|---|---|
| ALLOWANCE ON TRADE-IN $ | |
| LESS BAL DUE ABOVE $ | |
| NET ALLOWANCE | $ |
| PAID HEREWITH | $ |
| CASH BEFORE DEL. | $ |
| DESIGNATED DEPOSIT (INC. IN DN PMT) | $ |
| 2. LESS BUYERS DOWN PAYMENT | $ 1,000.00 |
| 3. UNPAID BAL. ON CASH SALES PRICE | $ 169,507.00 |
| 4. FINANCE CHARGE | $ |
| 5. ANNUAL PERCENTAGE RATE | N/A % |
| 6. TOTAL PAYMENT AMOUNT (3+4) | $ |
| 7. UNPAID BALANCE DUE PRIOR TO DEL. | $ |
| 8. TOTAL DEFERRED PAYMENT PRICE (2+6) | $ |

PAYABLE AS FOLLOWS: CASH SALE - on or before May 7, 2007

In the event the manufactured home cannot be delivered and/or inspection completed within the agreed delivery time due to nonperformance by the buyer, buyer agrees to pay one of the following at the option of the seller, either (1) to pay $ _____ charges per day until a manufactured home installation acceptance or certificate of occupancy is obtained in addition to all other consideration owing or (2) pay the sum of $ _____ in lieu of total consideration.

NOTICE TO BUYER: (A) DO NOT SIGN THE PURCHASE AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (B) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THAT AGREEMENT AND, IF PURCHASING A MANUFACTURED/MOBILE HOME COVERED BY A WARRANTY, A COPY OF THE WARRANTY. Complaints concerning the purchase shall be referred to the dealer and, if the complaint is not resolved, may be referred to Department of Housing and Community Development, Division of Codes and Standards, Occupational Licensing, Post Office Box 31, Sacramento, California 95812-0031 (telephone (800) 952-5275). A failure to disclose pursuant to this section shall not be the basis for a conditional sale contract.

Manufactured Home that I am purchasing will be used as a residence. I further certify that I understand that if subject Manufactured Home used for any purpose other than a residence, I may be liable, to the State Board of Equalization, for the tax measured by the amount paid pursuant to this certificate.

PURCHASER X Beryl Anderson

RECEIPT OF A FILLED-IN COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED BY PURCHASER  DATE 5/4/07
Purchase Order is subject to credit approval and is not binding unless signed by an authorized representative of seller. Purchaser certifies that he is of age, and agrees to sign a Security Agreement according to the terms herein. In the event payoff figures on a trade-in toward the purchase of a Manufactured Home are more than quoted by the Purchaser, the Purchaser hereby agrees to pay this excess on demand.
ALL TERMS AND CONDITIONS SET FORTH ON THE REVERSE OF THIS AGREEMENT ARE INCORPORATED HEREIN AND ARE FULLY APPLICABLE AS THOSE SET FORTH ON THE FRONT SIDE OF THIS AGREEMENT.
X: _____
X: _____  PURCHASER: X Beryl Anderson
AUTHORIZED REPRESENTATIVE OF DEALER  PURCHASER: _____
DATE: 5/4/07   2007

AMN Publications,
D. Whittlesey Publications

PURCHASER'S COPY

# EXHIBIT   2

LAW OFFICES OF
## GREENE, CHAUVEL, DESCALSO & MINOLETTI
A PROFESSIONAL CORPORATION
155 BOVET ROAD, SUITE 780
SAN MATEO, CALIFORNIA 94402
TELEPHONE: (650) 573-9500
FACSIMILE: (650) 573-9689
WWW.GREENECHAUVEL.COM
E-MAIL: MAIL@GREENECHAUVEL.COM

RONALD C. CHAUVEL
MICHAEL G. DESCALSO †
PAUL G. MINOLETTI
DAVID D. KIM
BRANDON L. REEVES
MARTIN E. HARBAND •
SUSAN J. BAYERD •

† OF COUNSEL
† BOARD CERTIFIED TRIAL
SPECIALIST 'NATIONAL BOARD
OF TRIAL ADVOCACY

RAYMOND A. GREENE, JR
(1931-1997)

SAN JOSE OFFICE
1625 THE ALAMEDA, SUITE 700
SAN JOSE, CALIFORNIA 95126
TELEPHONE: (408) 271-3870
FACSIMILE: (650) 573-9689

Reply To: San Mateo Office

February 12, 2008

Brian Pierce, Salesperson
CAL-AM Homes
4343 Auto Mall Parkway
Fremont, CA  94538

Vincent Gabrielli, C.O.O.
CAL-AM Properties, Inc.
1853 Ives Avenue
Oxnard, CA  93033-1813

Mike Edwards
Service Manager
CAVCO Durango Division
2502 West Durango
Phoenix, AZ 85009

## NOTICE OF DEMAND FOR RESCISSION AND RESTITUTION

RE:   **Michael & Joyce Anderson**
      **Southlake Mobilehome Park**
      **148 Coleridge Terrace, Fremont, CA**
      **Serial # CAVAZD 06-0873**

Dear Sirs:

This correspondence shall serve as Michael Anderson and Joyce Anderson's Demand for Rescission of the Purchase and Restitution of the sales price and incidental expenses related to the subject manufactured home because the subject manufactured home is substantially defective in manufacture, construction, assembly or installation. The Anderson's believe the home to be irreparable and do not believe that they could ever sell the home having to disclose so many defects.

## BACKGROUND

On April 4, 2007, the Anderson's entered into a Purchase Order with Dealer CAL-AM Properties, Inc. for the cash purchase of a new home manufactured by CAVCO Industries, Inc.

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 2

The total cash price paid, including installation, accessories, delivery, set up, taxes and fees was $170,507.00. Various representations were made about the size and quality of the home, upon which the Anderson's reasonably relied, including the assembly and installation of the home, which induced the Anderson's to purchase the home. As set forth below, the representations were not true. Escrow closed and Michael Anderson and family moved into the new home on or about May 1, 2007.

Beginning with the initial walk through of the home on April 9, 2007, and after moving into the home, the Anderson's discovered and reported a number of significant defects. On April 9, 2007, the Anderson's reported at least 46 various problems with the new home including extensive interior cracks, concerns over mold growth, and unlevel floors. See attached lists. On May 3, 2007, the Anderson's reported 9 more problems including a request for a mold report and a copy of the promised 5-year extended warranty. On May 24 and 29, 2007, the Anderson's reported 47 continuing problems with the home, including standing water under the home, unattached jacks, water leaks, unlevel floors, cracks, and damaged siding. See attached lists. On June 26, 2007, the Anderson's again reported defective siding, extensive cracks (again) unlevel floors, and various defects including a bent steel I-beam, with the home. See attached list. Attempts to repair by CAL-AM or their agents were ineffective as standing water remains under the home. Interior cracks have been repaired on three occasions and have returned shortly after each such repair.

On July 11, 2007, the Anderson's reported 5 additional problems including the damaged I-beam, unlevel floor, and lack of a ground vapor barrier under the home. See attached list. On July 26, 2007, the Anderson's reported 37 new or pre-existing defects including improper grading and drainage, unattached jacks, unlevel floor, missing lag bolts at the marriage line, HVAC ducts unsupported and directly on the ground, ripped and torn belly wrap, and extensive interior cracks. See attached lists.

On August 20, 2007, the Anderson's reported 21 new or pre-existing defects including torn belly wrap, unattached jacks, lack of proper drainage, seams in siding not caulked, extensive interior cracks, and the failure to provide the 5-year extended warranty and the mold report. See attached list.

On August 28, 2007, the Anderson's provided a list of specific areas where cracks were evident on the interior and required repairs. See attached.

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 3

On September 4, 2007, the Anderson's again reported 15 defects or problems, the most significant being the improper grading and drainage with water collecting under the home. See attached.

On September 17, 2007, the Anderson's again reported the various pre-existing defects including water ponding under the home, extensive interior cracks, and foundation jacks unattached. See attached.

On September 24, 07, the Anderson's again reported the various pre-existing defects including water ponding under the home, extensive interior cracks, and foundation jacks unattached. See attached. In addition, the Anderson's again requested copies of the promised 5-year extended warranty and the mold report. See attached.

On October 10, 2007, the Anderson's again reported standing water under the home. See attached.

On October 17 and 22, 2007, the Anderson's again reported 30 new or pre-existing problems or defects with the new home including extensive new cracks in the interior, torn belly wrap, unattached jacks, lack of grading and drainage, inoperable French drains, loose floors, and various other work that had been previously reported but remained unrepaired. See attached lists.

On January 17, 2008, the Anderson's again wrote to you after receiving a telephone call from HCD Inspector Lyle Curry that all warranty work has been "completed". This was not true and the letter sets forth the numerous problems, copy enclosed. Once again, CAL-AM has failed to properly repair the home and the Anderson's have suffered significant emotional upset, stress and anxiety over the continued problems, exposure to water intrusion, mold growth, and lack of concern or assistance in the proper repair of the defective home or defective components by either CAL-AM or CAVCO.

The Anderson's are frustrated with the inability of CAL-AM or CAVCO to properly correct the defects in the home or replace the home or defective components as required under the warranty and by law. The Anderson's have no confidence in the home or the contractors. The Anderson's have been forced to, and at this point, have no other desire than to rescind the transaction entirely and have their money refunded.

During the course of our investigation into the manufacture and installation of this home, it has been discovered that the defects are far more serious and substantial than previously suspected. Not only is the home subject to excess moisture from leaks and/or water intrusion

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 4

through the building envelope, there was no grading for drainage performed and water pools beneath the home, we are also concerned that the stem walls are not adequately engineered or properly installed.

The excess moisture and water under the home have caused the Anderson's concerns that this home is not suitable for living normally and they do not believe that the home or the lot can be repaired to insure elimination of the excess water under the home and have genuine concerns over damage due to excess moisture in the floors, walls, insulation and framing of the structure in the future. The home is not even marketable.

In addition to the problems and defects related to the construction and installation of the home, the Anderson's firmly believe that the subject home was misrepresented in that sales representatives Brian Pierce and Joi Gonzales represented that the home had 1,508 square feet of living area when it only has 1,386 square feet of living area; that the exterior siding and skirting was fiber cement and "will last forever" when it was, in fact, a wood product; that all of the foundation piers were much larger and different than the actual piers and concrete blocks installed; that the stem walls would extend the entire length of the home and do not; that water would not get under the home; that the walk-through repairs would be completed by April 27, 2007; that the lot was properly graded for drainage when it was not; that the home sat open for weeks before it was assembled during which time the home was water damaged – which was not disclosed; there was mold contamination at the home which was not disclosed; that one of the steel I-beams was damaged and bent but not disclosed; that everything would be repaired or replaced under warranty and it was not done; and, that a mold report would be provided but never has been.

The extreme disappointment and suffering, as well as listings of the extensive defects and problems associated with the purchase of the home are summarized in a letter dated September 8, 2007, from the Anderson's to Cory Sukert of CAL-AM Properties. Copy enclosed.

## ANALYSIS OF LIABILITY

### A. Breach of Contract

*Authority:* CACI 303 (Breach of Contract - Essential Elements) - "The essential elements of such a claim are: (1) the existence of a valid contract between the parties; (2) Plaintiff's performance; (3) Defendant's unjustified or unexcused failure to perform; and, (4) damages to Plaintiff caused by the breach."

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI
_____

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 5

*Case Law:* <u>Troensegaard v. Silvercrest Industries, Inc.</u> (1985) 175 Cal.App.3d 218 [220 Cal.Rptr. 712] (defective mobile home); <u>Drouin v. Fleetwood Enterprises</u> (1985) 163 Cal.App.3d 486 [209 Cal.Rptr. 623] (defective motor home).

*Facts:* On April 4, 2007, the Anderson's entered into a written Purchase Order (hereinafter "Contract") to purchase a new CAVCO Manufactured Home, located at 148 Coleridge Terrace, Fremont, CA (hereinafter "CAVCO Manufactured Home"), from Dealer CAL-AM for occupancy by the Anderson's as primary residence for Michael Anderson and his family. The purchase price of $170,507.00 included set-up and installation by CAL-AM.

In addition, it was represented by CAL-AM and it is implied in the contract that the new home and accessories would be properly assembled and installed by CAL-AM and free of substantial defects. CAL-AM selected and certified that the installation contractor on the contract was to be ACI Construction. By selling a defective home to the Anderson's, CAL-AM breached the contract. When the defects were timely discovered and reported by the Anderson's, neither CAL-AM nor CAVCO properly repaired the defects in a timely and workmanlike manner.

B.    <u>Breach of Written and Statutory Warranty (Civil Code §1794, et seq. Title 15 U.S.C. §2301, et seq. and Commercial Code §2314</u>

*Authority:* Written Warranty. The Defendant manufacturers, dealers, and sellers provided the Anderson's an express, written warranty on the new manufactured home. In said express warranty, you warranted:

> Your new home, including the structure, plumbing, heating and electrical systems installed by the manufacturer, is warranted under normal use to be free from manufacturing defects in material or workmanship. Any such defects will be repaired or replaced at Cavco's direction. This warranty extends to the first retail purchaser and begins on the date or original retail delivery and extends for a period of one year from that date. This Warranty covers only those defects that become evident within the applicable warranty period, as set forth above, and where notice was given to the selling dealer or the manufacturer not later than ten (10) days after the expiration of the warranty period.

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 6

Further, when the Dealer failed to properly repair or replace to correct the defects, CAVCO should have repaired or replaced to correct the defects, as set forth in the Owners Manual:

Dealer's Obligations:  By agreement with the manufacturer, the dealer is obligated at no charge to the owner to repair or replace any parts necessary to correct defects in material or workmanship, or will forward the complaint to the manufacturing plant for resolution of the problem.

If the Dealer Does Not Resolve the Problem: which the owner is convinced is covered by the Warranty, he should contact Cavco Industries, Inc. at the address on the cover and provide in writing a description of the problem and the attempts made to resolve it.

Manufacturer's Obligations:  Upon receipt of notice of a claim, where the dealer was unable to resolve the problem, the manufacturer will repair or replace any parts necessary to correct defects in material or workmanship, or will take other appropriate action as may be required.

Song-Beverly Act:  "All new mobilehomes and manufactured homes sold to a buyer shall be covered by the warranty set forth in this chapter." (CC §1797)

Magnuson-Moss Act: . . . a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief. . . if a consumer finally prevails in any action brought he or she may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorney's fees based on actual time expended) . . .

Commercial Code §2314(1):  Unless excluded or modified a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI
_____

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 7

"Warranty applicable to Manufacturer, Contractor, and Dealer." (CC §1797.2)

"The warranty...shall be set forth in a separate written document that reprints all of the provisions of this chapter and...shall contain, but is not limited to, the following terms: (a) that the mobilehome or manufactured home is free from any substantial defects in materials or workmanship; (b) That the contractor, manufacturer, or dealer or any or all of them shall take appropriate corrective action at instances of substantial defects in materials or workmanship which become evident within one year from the date of delivery of the mobilehome or manufactured home...; (c) "That the manufacturer and the contractor or dealer shall be jointly and severally liable to the buyer for the fulfillment of the terms of warranty, and that the buyer may notify either one or both of the need for appropriate corrective action in instances of substantial defects in materials or workmanship... and, (g) That, if corrective action taken by the manufacturer or the contractor or dealer fails to eliminate a substantial defect, then the material, system, appliance, or component shall be replaced in kind." (CC §1797.3)

*Facts:*   The Anderson's were promised a new home and accessories properly assembled and installed.  They repeatedly complained, in writing, to both CAL-AM and CAVCO on several occasions about the ongoing drainage and standing water problems.  By failing to correct these defects or replace the defective home or its components, CAL-AM and CAVCO breached both the written warranty and statutory warranties.  Further, CAVCO did not take steps necessary to insure that the warranty repairs would be performed in a timely and workmanlike manner, instead denying responsibility.  See CAVCO correspondence dated June 29, 2007, copy enclosed.

## C. Fraud and Misrepresentation

*Authority:*   CACI 1900 - Intentional misrepresentation, CACI 1901 - Concealment, CACI - 1902 False Promise, CACI 1903 - Negligent Misrepresentation. Fraud and deceit are defined in Civil Code Sections 1572, 1709 and 1710. Civil Code §1710 specifies four kinds of deceit, as follows:

A deceit, within the meaning of §1709, is either:

1.   The suggestion, as a fact, of that which is not true, by one who does not believe it to be true (intentional misrepresentation of fact);

2.   The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true (negligent misrepresentation of fact);

3.   The suppression of fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 8

of that fact (concealment or suppression of fact); or,

4.    A promise, made without any intention of performing it (promissory fraud).

A misrepresentation need not be oral; it may be implied by conduct.  Thrifty-Tell, Inc. v. Bezenek (1996) 46 Cal.App.4th 1559, 1567; 54 Cal.Rptr.2d 468.

*Facts:*  As the Dealer and seller of the new manufactured home and as the captive new home Dealer for the Southlake Mobilehome Park, CAL-AM and its employees and agents had a special relationship with the Anderson's and owed them a fiduciary duty such that CAL-AM should not have misstated or concealed its role in the assembly and installation of the home, the preparation of the lot for the home, the experience and ability of the installation contractor, the quality of the home, the size of the home, and further owed the Anderson's an affirmative duty to provide to them, as new homeowners, a Mobilehome Park Rental Disclosure form as required by the Mobilehome Residency Law, Civil Code §798.75.5.  This disclosure has never been provided to them.

## D.  Costs and Attorney's Fees

*Authority:*  Song-Beverly Consumer Warranty Act.  Magnuson-Moss Warranty Act.

The Song-Beverly Act, Civil Code §1794, provides in pertinent part, as follows:

> "(d) If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action."

The Magnuson-Moss Act, 15 U.S.C. §2301, et seq. provides in pertinent part as follows: . . . a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief. . . if a consumer finally prevails in any action brought he or she may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorney's fees based on actual time expended) . .

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 9

*Facts:* The Anderson's will undoubtedly prevail in this action under a breach of contract or breach of warranty theory. Costs and fees will multiply significantly if this matter proceed to litigation.

## DAMAGES

As a result of CAL-AM's breach of contract, breach of warranty, numerous misrepresentations, and failure to honor the written warranty and statutory warranty, the clear evidence that the subject home is defective in installation and manufacture, and the failure of CAL-AM or CAVCO to remedy these problems in a timely and workmanlike manner, the Anderson's elect rescission and restitution as the appropriate remedy. The Anderson's want their purchase money refunded along with all incidental expenses.

In summary, CAL-AM has not taken the Anderson's numerous request for repairs seriously, causing them exposure to excessive water accumulating under and around the home and resulting in unhealthy and potentially uninhabitable conditions. This conduct is willful under the Song-Beverly Consumer Warranty Act (Civil Code §1794) and may entitle the Anderson's to recover a civil penalty of up to two times the amount of damages. At this point in time, CAL-AM and CAVCO need to refund the purchase price to the Anderson's, along with all incidental expenses, interest, plus costs and fees incurred.

The Anderson's paid cash in the total sum of $170,507.00 to CAL-AM for the subject home. In addition to the cash price paid for the home, the Anderson's, if forced to proceed with litigation, will seek a refund of monthly space rent, moving expenses (both in and out), refund of sales taxes, cost of insurance, costs of cable and telephone installation, cost of improvements to the home or space, registration cost, interest at the legal rate, a civil penalty of up to two times the actual damages, and all costs and attorneys' fees incurred in pursuing this matter. If CAL-AM proceeds with a "buy back" of the subject home, CAL-AM can then remove, repair or replace the home, as appropriate. Continued delay by CAL-AM to rescind the deal will only increase the Anderson's damage claims.

To date the Anderson's have incurred the following damages:

| | |
|---|---|
| Purchase Order Cash Payment (May 2007) | |
| Property Taxes | $170,507.00 |
| Insurance | $    TBD |
| | $    TBD |
| **Total Purchase Expenses** | |
| | $170,507.00 |
| Prejudgment interest (10% legal rate) | + $   14,209.00 |

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 10

| | | |
|---|---|---|
| Monthly Space Rent (Effective May 2007) | $950.00 x 10 = | $ 9,500.00 |
| Moving Expenses (in and out) | | $ TBD |
| **Total Damages Including Interest** | | $194,216.00 |
| Attorney's Fees to Date (approximate) | | $ 7,500.00 |
| Legal Costs and Expenses to Date (approximate) | | $ 3,000.00 |
| **Total Demand** | | $204,716.00 |

This settlement demand is contingent upon your acceptance by **February 28, 2008** and agreement to suspend responsibility for payment of the monthly space rent at the Southlake Mobilehome Park effective March 1, 2008, and to hold the Anderson's harmless from any further debt or obligations in that regard. If you proceed with a "buy back" of the subject home, you are responsible for all costs, fees, title insurance, registration, escrow fees and all other costs and fees associated with a "buy back" of the subject manufactured home.

If you need additional documentation, please contact my office.

Sincerely,

*Paul G. Minoletti*

PAUL G. MINOLETTI

PGM:vp
Enclosures

cc:   Michael Anderson
      Joyce Anderson

*VIII*
*House*
*Brain 4/9/*
*made this LIST walk House.*
*after inspect*    b *i.s. Warranty*    4/9/07

Walk thru #148 Coleridge Terrace 04/09/2007

1. Seal siding/skirting
2. Fasten water outlets both sides of home
3. Install rain gutters
4. New rear steps/replace belly band at rear door — Mold on Back of Porch
5. Water heater door, cracked — inside — Mixed
6. Sand/repaint master bedroom doors and jams
7. Defect in master tub, large scratch on wood sink cabinet, check all cabinets near toilet
8. Caulk all tile, entire home
9. Master bath fixtures — Lights / glass missing,
10. Drywall seams master bedroom
11. Replace blinds master bedroom — cleaned
12. Seam in living room carpet, metal striping or tack and roll
13. Re-level entire home, check pillars
14. Paint and texture living room ceiling
15. Drywall cracks in kitchen
16. Scratched cabinets/laundry room
17. Cracked drywall/laundry room/above door
18. Caulk above hallway doors
19. Check interior paint/ hallway/bedrooms
20. Check kitchen cabinets, nicks on cabinets with glass doors.
21. Install lights/living room/plant shelf
22. Sand/paint all baseboards
23. sand/paint all doors including front
24. Defect in paint at dinning room devider/corner

Cracks All Walls & Ceilings
Cieling    Master Bedrm crack
Wall near tub - crack near tile, bath crack.
kitchen corner
Living Rm - Ceiling - Patch needs Paint
"        "    "        Hall    "    Closet
Master Bed Room    Baseboard
No Air Conditioner - Install
Smoke Detectors - check
Fix Front Porch - space near steps
each corner
Adjust Doors Don't close
Locks
Bally Bendon Rear - Broken
Phone & Comcast

Broken Wood -
Driveway Siding
& Holes in Retaining Wall

Paint on
Curtains
Turn on Gas

No Dryer Ven to Outside

Front & Rear
Dead Bolts Don't
Go On
New Locks.
No Foundation

5 YR Warranty
In writing
on purchase

Mail Box Post

PG & E meter
Rusted Gas
Pipes Rusted
Check Smoke
Detectors

... Carriage

4/9/07
Brian

✓ ① ~~Need Dryer~~ Vent to outside of house.
✓ ② Need Mail Box Post.
✓ ③ Need Telephone Hook-up to all Rooms.
✓ ④ Need Comcast Hook-up to all Rooms.
✓ ⑤ ~~Front & Rear Doors - Dead Bolt does Not L~~
✓ ⑥ ~~Doors do Not close properly~~

✓ ⑦ Rear Steps ~~Are painted.~~ Replace .. not Redwo
/ALL ⑧ Doors Need Paint - inside & outside -
   Front, Rear, Bedrooms & Bathrooms.
✓ ⑨ Belly Band on Rear needs Replacing.
✓ ⑩ Water Heater door cracked on inside/ Mold
✓ ⑪ ~~Tile needs caulking - Kitchen & Baths.~~
✓ ⑫ ~~Needs Light Fixture in Master Bath.~~
✓ ⑬ ~~Paint on Blinds in Living Room & Master Bedr~~
✓ ⑭ Paint on Curtains in Living Room.
  ⑮ ~~Base board in closet of Master Bedroom needs pai~~
✓ ⑯ ~~Dining Room Divider has defect at corner,~~
  ⑰ ~~Need Metal Strips on Carpet at Kitchen & doors~~
✓ ⑱ ~~Living Room ceiling Patch needs Paint in corner~~
  ⑲ Space Between Front Porch & Steps needs Fixing.
  ⑳ ~~Carpet in Living Room - Seam down middle -~~
  ㉑ ~~Turn on gas for Stove & furnace.~~
  ㉒ ~~Caulk Tub - master Bath.~~

Brian

148 Coleridge                    5/3/07

✓① Wires above ground - next to driveway

✓② Comcast wire above ground, on walkway
on back porch side of house.

✗③ Exposed wires on Sprinkler
control Box.

④ Water Box Leaking (Green), full of Mud

~~Sprinkler on Back Porch Side 1~~
~~1 Foot Below ground level.~~

✓⑤ Plant grass.

⑥ Where is 5 yr warranty.

⑦ Mold Report

⑧ Remove sprinkler head next to Front steps.

⑨ Touch-up Paint.

# 148 Coleridge

Don
5/24/05

(1) Where is Water coming From — und.
House? All ~~Dirt is wet~~ all around.

(2) Re-grade ground under House.

NO (3) Replace Plastic on ground.

(4) Pick-up wood under House.

(5) Attach Jacks to Footings & to house.

(6) Fix Leaks under House —
    ✓ Master Bath shower.
    Wash Room.

NO (7) Remove wet Insulation — 2 spots.
NO → Treat wet wood. — Let Dry.
NO → Replace Insulation → NO Put Wet Insulation Back.

NO (8) Fix All Holes in Plastic holding
    Insulation. Replace where Badly torn.

NO (9) Replace Insulation where it is
    Falling out, under House.

# (10) Caulk around All Windows — & Paint.
    One window on porch has ½ of Caulking.

✓ (11) Finish Back Porch — Fix Board on Back.

✓ (12) Paint, ~~~~~ window Trim — caulking ont
✓ (13) Relevel House — Fix Resulting Cracks. side

3/24/01

#2

14) Re-Level Porch - Porch & Post are crooked

✓ 15) Replace skirting = cement board - Caulk & Paint.

✓ 16) Re-place curtains - (paint on them).

✓ 17) Badly Rusted GAS water pipes under Wash Room
← Painted

✓ 18) Water shed Heater Door - Sheet Rock Broke
Also - screws are all the way Through
Door on out side.

✓ 19) Damaged Siding,

✓ 20) Sewer Line is higher where it
goes outside house, instead of Lower.

✓ 21) Washing machine - Hot Water Faucet,

(4) 22) Front Porch not Level

✓ 23) Put in French Drains - Front + Sides,

✓ 24) Put Block Wall + drains around house, back + front
Floor, down middle of house, is uneven
- one side is higher than the other -
even after house Leveled 2 times,

✓ 25) Siding damaged where skirting Removed.

5/29/91
Brian

170 Coleridg :

①

✓ ① Black Plastic, under house, is torn & Insulation is on the ground. Replace — Both.

✓ ② Ground is wet under plastic on ground. Where is it coming From?

③ Re—grade ground under house. Replace Plasi

✓ ④ Build cement Retaining walls.

⑤ Attach jacks to Footings & house.

✓ ⑥ Fix x 1/2 leaks, Replace wet Insulation, after wood is dry & Treated ~~Replace Washroom Fauc~~

⑦ Pick—up & Remove wood, on ground, under House

⑧ Front Porch is not Level — Fix.

✓ ⑨ Sewer Line is higher, where it goes outside of house, instead of Lower.

✓ ⑩ Install drains all-around outside of House.

✓ ⑪ Fix Damaged Siding, where skirting was Removed

✓ ⑫ Relevel House & Fix Resulting cracks in House.

5/29
Brian

②

✓ ⑬ Gas pipes under wash Room are Badly Rusted.

✓ ⑭ Replace skirting, caulk + paint.

✓ ⑮ Water Heater Door — sheet Rock is Broken on corner. Screws go all the way through door.

✓ ⑯ Replace curtains with paint on them.

⑰ Finish Back porch.
Fix the board on Back.

✓ ⑱ Floor → down middle of House, is uneven. — one side is higher than the other, even after house has been Releveled Two Times. You can Feel it on the carpet

⑲ Siding damaged where skirt was Removed.
⑲ Siding damaged where skirting was Removed

✓ ⑳ Steel Beam across Left Front, under Porch, is Bent + does Not meet Right Beam.

㉑ Gap Between two sides of house at marriage joint. one side is higher Where is Seal at marriage joint?

✓ ㉒ Front window is caulked Half way around on Porch

6/24/0.

CAVCO
Mike Edwards
Ron

148 Coleridge
(OUTSIDE)

①

Additional to complaint Report (state) + other work Not
Done

✓ 1. Belly Plastic has been taped two times.
Tape is coming off again.

✓ 2. Tape on Bare wood, where plastic is missing,
is coming off.

✓ 3. Water Heater Door has holes where screw
went all the way Through. ~~Door Stayed~~

4. Siding has holes, where yellow Tape was stapled
around Rear door.

✓ 5. Large Air/Heat duct is laying on ground
under house.

✓ 6. Right I-Beam, at street end, is bent &
weld is broken.

✓ 7. Ron said They are NOT Replacing plastic
on ground.
Mike Edwards (CAVCO) advised that
plastic be put on ground.

8. Front Porch —
  ✓ 1. Left I-Beam has not been fixed.
  2. Patches at corners & center — BAD.
  ✓ 3. Left end — Rail is sagging — NO Support.
  4. Porch not Level — center, where
patched does not meet. Left post leans.
  ✓ 5. Nails are coming up on deck — again.

6/ **[date]**
Cavco
Mike Edward
Ron

148 Coleridge

(Inside)

②

Additional (to state Report) + Other work not Do

✓ 1. Cracks all over house, again.

✓ 2. Floor not level - down center of House, inside

3. Floor squeaks in Master Bedroom, Right side of Be

✓ 4. Wall cracked at Top & Bottom, Right, some of Th in master Bath.

✓ 5. Tile grout cracked above Tub - master Bath

✓ 6. Tile grout Cracked on Right side of Shower - master Bath.

✓ 7. Tile only siliconed part way, above left sink & in master Bath

✓ 8. Front Bed-Room, patch above closet left corner, needs paint to match wall. Also closet Trim at top-same

✓ 9. Nail pushing up Linoleum at Front door, entry

✓ 10. Curtains still have not been Replaced, with paint on Them.

✓ ⑪ Tile coming off Front edge of Tub (Master Bath?

✓ ⑫ Ceiling at marriage joint needs Retexture & Paint.

7/11/07

" BRIAN          148 Coleridge

Additional Problems

① STEEL I-Beam, street end of House, Right side, is Bent and weld is Broken (This is in adition to Bent I-Beam under Front Porch)

② Screws ~~Lag Bolts~~, connecting Two sides of House, at center, under House, are all on one side. Code is They are supposed to Be alternated; every other one on Both sides of center Joint. NO LAG BOLTS on Marriage Join

③ Nail pushing up Linoleum at front door, entry,

④ Floor not Level down center, inside house

⑤ We Want Plastic ground cover Replaced. Homes come with it & cavco Reccommends it.

Ron says NO

Mike Edwards (CAVCO)



MLO
7/26/07

178 Coleridge, Fremont
Outside

①

DO NOT Replace Skirting until you have.
Completed work under house.

Under House:
① Clean out wood, cement, garbage, etc.
② Fill in holes. & Low places with gravel. & Grade grow
③ Install a drain under Front Porch.
④ Replace jacks under house that were removed.
⑤ Attach All jacks to House & Footings.
⑥ Level House at marriage joint - Floor, inside, is Not Leve
* ⑦ Level Front Porch. It is higher on one side. Post is Leaning
10← ⑧ Re-Level whole house.
Lag Bolts ⑨ A section of marriage joint, near Front of house, has Lag
Bolts all on one side, instead of alternating sides.
HOLE ⑩ Raise Air & Heating Duct off ground & attach to house.
very ⑪ Replace Badly Rusted gas lines, outside & under house.
me ⑫ Fix sewer line, where it is higher going to drain.
* ⑬ Clean cement off utility lines.
⑭ Replace ground plastic.
⑮ Replace Belly PLASTIC. Cover All holes with New.

① Finish Back Porch, Replace cracked Post, Paint.
② Front Porch:
        Fix sagging Rail at end of Porch.
        Fix nails coming up on deck.
        Fix Leaning Post.
        Fix Patch at Front steps & Both ends of Porch.
        Level Porch.
        Finish caulking around Front window & Paint
③ Paint window Trim that has white caulking, side of
④ Paint Water Heater Door. house.
⑤ Caulk & Paint Holes in siding around Back door.
⑥ Fix damaged siding where skirting was Removed.
⑦ Replace Dryer Vent, to outside.
⑧ Replace Rain gutter



7/26/07                    148 Cook edgo, Fremont

Inside

②

① Fix cracks in ceiling & walls, Paint.

✓② Check Floor down middle of house. Is it Level?

✓NO③ Floor squeaks in Master Bathroom & Bedroom. Living room not Level.

④ Wall cracked at top & Bottom, Right corner of tub in master Bath.

✓⑤ Tile grout cracked above Tub, master Bath

✓⑥ Tile grout cracked on right side of shower, Master Bath

✓⑦ Tile needs caulking above left sink, master Bath

✓⑧ Tile falling off front edge of Tub, master Bath

✓⑨ Front Bedroom, patch above closet & closet trim need paint to match wall.

✓⑩ Nail pushing up linoleum at Front door, entry.

⑪ Ceiling at marriage joint needs retexuring & Paint.

⑫ Where are The cans of Touch-up paint CAVeo said we are supposed to get??

⑬ Crack Below Bath tub, in wall, Right side.

⑭ Caulk Seams in Siding — Driveway Side & Street Si.

(1)

## 148 Coleridge Terrace/Anderson

| Completed | 7/26/2007 | |
|---|---|---|
| Initials | | |
| BJA | | **Items** |
| | | **Outside** |
| | 1 | Clean out wood, cement, garbage, etc. |
| | 2 | Fill in holes and Low places with gravel and grade ground |
| No | 3 | Install a drain under front porch |
| No | 4 | Replace jacks under house that were removed |
| ✓ | 5 | Attach all jacks to house and footings |
| | 6 | Level house at marriage joint-floor inside, is not level |
| ✓ | 7 | Level front porch. It is higher on one side. Post is leaning |
| ✓ | 8 | Re-level whole house |
| ✓ | 9 | A section of marriage joint, near front of house, has screws |
| BJA | 10 | Raise air & heating duct off ground & attach to house — bolts all on one side of alternating sides — No  [Tag Bol At Marra Joint.] |
| BJA | 11 | Replace Belly band, rusted gas lines, outside and under home — Partly Done |
| BJA | 12 | Fix sewer line, where it is higher, going to drain — Painted Gas Lines |
| BJA | 13 | Clean cement off utility lines — Frank Gomez : Change Sewer Joint. |
| ✓ | 14 | Replace belly plastic, cover all holes with new — Taped over holes. |
| | 1 | Finish back porch, replace cracked post-paint |
| | 2 | Front porch |
| ✓ | | *fix sagging rail at end of porch |
| | | *fix nails coming up on deck  —  needs Paint |
| ✓ | | *fix leaning post |
| | | *fix patch at front steps & both ends of porch |
| ✓ | | *level porch |
| | | *finish caulking around front window & paint |
| ✓ | 3 | Paint window trim that has white caulking & side of house |
| ✓ | 4 | Paint water heater door , Caulk Holes — |
| ✓ | 5 | Caulk & Paint holes in siding around back door |
| ✓ | 6 | Fix damaged siding where skirting was removed  + Paint. |
| ✓ | 7 | Replace dryer vent to outside.Replace rain gutter down spouts |

word2 .ll

| | | Inside | |
|---|---|---|---|
| | 1 | Fix cracks in ceiling & walls, paint | |
| BJA | 2 | Check floor down middle of house. Is it Level? | NO |
| | 3 | Floor squeaks in Master Bathroom | |
| BJA | 4 | Walls cracked at top & bottom, right corner of tub in master bath | |
| BJA | 5 | Tile grout cracked above tub, master bath | |
| BJA | 6 | Tile grout cracked on right side of shower, master bath | |
| BJA | 7 | Tile needs caulking above left sink, master bath | |
| | 8 | Tile falling off front edge of tub, master bath | |
| | 9 | Front bedroom, patch above closet & closet trim, need to paint to match wall | |
| | 10 | Nail pushing up linoleum at front door entry | |
| | 11 | Ceiling at marriage joint needs retexturing & paint — | FiX CRack |
| BJA | 12 | Wher are the cans of touch up paint, CAVCO said we were to get | |
| BJA | 13 | French drains back filled with 3/4" drain Rock | |
| | 14 | Topped with top soil and rock Same as #10 — | NOT |

Caulk seams in siding at Drive way side of street end
[handwritten text illegible]

8/20/01
Brian

148 Cole idge

✓ ① Belly Plastic missing in 3 lg. Sections. Insulation exposed. Has Tears & Holes all over, sides & center.

② Jacks are Not All attached to house & Footing

③ Jacks are Rusted.

④ House is Not anchored To concrete Blocks All arou

✓ ⑤ Loose Pipe, hanging under house, at street-end with water draining out. It is not draining outside.

✓ ⑥ Sewer "T-Joint" not corrected → Per: "Frank Gomez

⑦ Front Porch work not done, Not Level, Post Leans Wrong Paint on one Piller center.

⑧ Back Porch work Not Finished. No Paint
No fix → (Posts have cracks) No Hardy Board on Back

✓ ⑨ Skirting Nails sticking out. seams are Not caulked and Painted.

✓ Damaged Siding Not caulked & painted.
⑩ Wood on ground under House.

⑪ Grading of ground under House, Not corrected as per "Frank Gomez".

⑫ No Drain installed under front porch, For Water.

⑬ Holes in water Heater door, need caulk & Paint

7/12/01
Brian

148 Col. Ridge

(2

(14) Replace Rain gutter down spouts.

(15) Caulk & Paint staple holes around Back door

✓ (16) Caulk Beams in siding & paint.

(17) Remove Sprinkler Control Box From side
of house, Caulk & Paint.

(18) Repair All cracks in walls & ceiling, inside
& paint.

(19) Marriage joint in ceiling needs ReTexturing
& paint.

(20) Repair cracks in Master Bath wall,
above & Below Tub.

✓ (21) Need to Bury Com-Cast Cables —
Both sides of The house.

We have Not Received 5 yr Warranty -
Mold Report.



148 Coleridge Ter.

## Cracks to be fixed                    (Andersons)

- Living Room – Make whole Line – Texture & Paint.
- Corner (kitchen) behind microwave (all the way above cabine)
- Dinning room window (porch side) lower right
- Dinning room ceiling – left corner (check right
- 3 Living room windows (behind window) behind couch
- Kitchen — ceiling – joint with dining Room
- Living room right corner (top)
- Hallway – large crack
- Hallway above office door (left top)
- Hallway above laundry room door (potential)
- Office – top right corner above door (left corner/closet)
- Office door molding (top left) inside Room
- Hallway above office (runs along corner at ceil
- Hallway above master (runs along corner at ceilin
- master bedroom Bedroom
- Sheet Rock seams Dining Rm, 2 Bedroom 3 Hall
- Master bathroom (left side) between (1) bathroom kitchen door & cabinet
- Master bathroom window top and bottom paint
- Laundry room wall above door (left & right)
- Laundry room corner above outside door (right)
- Laundry room top corner (right of dryer)
- Laundry room above outside door (left & right)
- Molding, above Front door, needs paint.
- Hall
- Bathroom ABOVE DOOR — at ceiling crack
- Living Room – Top door Trim

## Master Bedroom –

- Window to right right of bed top
- Left corner
- Sheet Ro

(left margin notes)

Living Rm. corner of shelf above TV.

1st Bedroom top Lf. & Rt of window

Kitchen: skylight

Hall: all Sheetrock seams in ceiling.

office also wall Left – door inside

ster Bath lge Tub Right

aundry Rm whole wall at ceiling

"Brian

# 148 Coleridge

①

#(A) Tape on Belly is still Loose + coming off where Ron
Put new Tape over the old Tape.

① All Jacks (Piers) are Not Attached to House

② Not graded Properly under House &
out to street. Water going under House

Dirt is Higher outside at Street end

③ Grass was installed instead of Cement
That was Requested on Front, side & street
end

④ Water From grass is Running Under
House + has spread 5 to 8 feet Bac

⑤ Sprinklers Do Not work.

⑥ Neighbors have been watering with
Hoses.

⑦ Grass installed over Rock, old grass
and Very Tall grass + weeds.
Ground was not prepared first.

⑧ Sprinkler control Box on side of House
Turns on ONE sprinkler

⑨ Brian stated That Sprinklers would
be hooked to Park system ,
Not to House.

⑩ Grading Never completed, To make Trench
for water, on Both sides of House.
Between neighbor

9/4/01

BRian              148 Coleridge              #2

① FRont Rain downspout, at driveway, is Bent at the Bottom, and split open at The top. Also needs paint on down spots.

② Sprinklers near Front Porch are too high above grass, Lawn mower will Break. One is already Broken off.
                                                           Than

③ areas on Sides of house with NO sprink

④ French drain, driveway side, street end of house will drain back under house.

⑤ Grass at street end, where we want cement, Has No sprinklers.

9/17/01
Brian      148 Coleridge

1. There is Water Under The House !!!
   street end is Soaking wet.
2. Sprinklers on side of house are hitting house
   & going in Vents.
3. Sprinklers at Front are hitting Front porch
   & going under house.
4. Sprinklers are too high above ground &
   will be broken by the Lawn mower.
5. Sprinklers at street end do Not work.
6. Finish putting edging between Rock & grass
   in Front of Rear Porch.
7. Attach Jacks to House.
8. Fix Front Porch — Not Level & Post is Leanin
9. Patch Three cracks inside house That
   were not done & Fix Wall.
10. Paint inside — 35 cracks &
    sheet Rock Repair.
11. We Do Not want grass at
    street end. Water is going under
    House.

        Put in cement.

12. Tile coming off Front

9/24/07
Brian                148 Coleridge

① Standing water under house after rain on 9/22/07.

② 2 new cracks in walls
   Master Bathroom: Right window, Top Left corner.
   Dining Room: Left window, Lower Left corner.

③ New Paint done 9/20 & 9/21/07 does not match old paint
   on ceilings in Master Bedroom & Living room.

④ Another
   Tile is coming off Front of Tub in Master Bath.

⑤ Rain gutter downspout, driveway side — street end,
   is Broken at the top & dented at middle & Bottom.

⑥ Front Porch work has Not Been done:
   Porch not Level & Post Leans.

⑦ Jacks (Piers) under house are Rusted at top Posts.

⑧ Finish putting edging between grass & Rocks
   From the Rear porch to the Front, around utilities.

⑨ Sprinklers are Not working.

⑩ Have Not Received Mold Report.

⑪ Have Not Received 5 yr. warranty.

⑫ Jacks (Piers) under house have Not All been
   bolted To The house & to the Footings.

10/10/07
Brian

148 Coleridge

Rain - 10/10/07

There is standing water
under the house at the
street end.

10/11/00
Brian                    148 Coleridg Ter.                    ①

① New Cracks: Master Bath — Rt. window, Top & Bottom.
   Master Bedroom — Rt. window, upper Left.
   Washroom — Top, Rt. Corner, above door.
   Dining Rm. — Lf. window — Patch Lower Lf. is soft.
   Office — corner of window
   Hall — Patch on ceiling is showing.

② Window Ledge above Front door has No Plaster, No Paint

③ There is no caulking around toilets, Tubs, shower,
   at Floor.

⑤ Tiles are coming off Front of Master Tub & Kit. Coun.

⑥ None of Phone Jacks, in house, work, When it Rains,
   The wires, under house, street end, are in the water.
   Comcast said They did Not install Them wires.
   It is the Parks job to Fix it.

⑦ Toilet J Hall Bath, Not Flushing correctly.

⑧ Screws are coming out of The wall, in Living
   Room, Below Front window, Porch side.

⑨ New Paint, outside, street side, does not match old Paint.

⑩ New wood, Below Front Porch, was not caulked,
   Rust is Running out, down Front.

⑪ Latch on Front of Furnace does not close.

⑫ Belly Plastic Tape is coming off .. Insulation exposed
⑬ Construction Lumber still under House.

10/1/07
Brian          148 Coleridge Ter.                    E

(14) Sprinklers —
        Workers did Not Return & Finish Fixing
The Control Box. Wires & gauges are in mud & wet
Sprinkler Heads were not Replaced with
Shorter ones. Three have been Broken by Mower
Sprinklers at street not water all of grass,
    Part of it was dying —
Sprinkler at side is still hitting house & vent.

(15) Work From Previous Lists: workers
     Never Returned to finish work on marriage
line, Front Porch, Piers under house, water
under house, Inside paint, Rain down spout,
Split posts on Rear Porch, Rain Through Front
Porch, construction wood Left under house,
Grading of Lot, Lg Air & Heat duct not anchored
   every 48" (part of it still hangs down to ground).

(16) There is No water coming out of French drains when
   it Rains. State inspector put a hose in at The
Front & no water came out at The end.

10/27/01
Brian

148 Coleridge

① Drive way has Long cracks, From House to Stre

② Car port leaks when it Rains. (Near Fauce

③ No water comes out of French Drains, when Inspector Lyle Cuomo Put Hose in it.

④ More New cracks:
Living Rm. - 2 cracks above 2 Front windows (Bar
Living Rm - crack on Patch, Below Left window
    (drive-way side), near Floor.
    Master Bath - more cracks, Below Rt. window.

⑤ Wall is Bulging where sheet Rock was Repaired -
High on Left side, near light.

⑥ Patch along marriage Line is uneven -
Looks Bad.

⑦ Loose Boards, living Room, making noise,
shaking. Since They were Banging on steel,
Under house - 10/19

1-17-08

CAL-AM Properties:

RE : 148 Coleridge Ter. Fremont, CA.

On 1-10-08 Lyle Curry, from the State Dept. of Housing, called me and said he had received a letter from you stating that you had completed the work on the house at 148 Coleridge Ter. You have not notified me of this fact. Please write me a letter at this address concerning this.

The contractor , Ron, called me in Dec. 2007. He wanted to come and finish painting the ceiling in the house. We asked that he wait until after Mike and Rashelle's baby is born in March, 2008. He agreed. Other than that we have not heard from him and he has done no work since Oct. 2007

Here is another list of the repairs needed, that have been on the other lists turned into Brian at Southlake.

1. There continues to be standing water under the house when it rains.
2. The piers and their footings are rusted.
3. The dryer exhaust hose is laying on the ground, under the house, and is not connected to the outside vent
4. The large Air/Heat duct is still partially touching the ground. Only parts of it are raised off the ground.
5. The driveway has many cracks.
6. The carport cover leaks when it rains.
7. The new paint on the outside of the house does not match the old paint.
8. The front porch has not been fixed. It is not level and one post is leaning .
9. There is still construction lumber under the house.
10. No water comes out the ends of the French Drains.
11. There are rust stains along the lower part of the front porch.
12. The rain gutter downspout, near the driveway, damaged by your workers, has not been replaced.
13. The lawn sprinklers do not work. The control box on the house does not work. The gauges and wires on the ground are full of mud, the box around them was removed by your workers.
14. Ron did not finish putting the edging between the rocks and the grass, in front of the rear stairs and around the utilities. What we need here is a cement sidewalk from the rear stairs, around the utilities, to the street, like the sidewalk that is at 103 Brook Ter.
15. There are cracks all over the inside of the house again.
16. There are screws coming out of the living wall, below the front window, on the porch side.
17. The loose tiles, in the kitchen and master bath , have not been repaired.
18. The window ledge, above the front door, that has no plaster and no paint, has not been repaired.
19. The latch on the front furnace panel has not been repaired. It cannot be closed.
20. The front door sticks and is hard to close.
21. The painting on the inside, that Ron did not finish, can be done after March, when the baby is born.
22. We have not been given the extended five year warranty that we were promised.

Please write and let me know what is going to be done.

Thank-You,

Joyce Anderson
148 Coleridge Terrace
Fremont, CA. 94538

Cory Sukert
Cal-Am Properties

9/8/07

Dear Mr. Sukert:

My name is Joyce Anderson and I am the very unfortunate buyer of 148 Coleridge Ter., Fremont, Ca. I bought the home on April 6, 2006 and my son and his family moved in at the beginning of May. We have suffered extreme stress and anxiety since buying this house. I do not sleep at night worrying about all of the problems. I am 66 yrs old and it has been very hard on me. I am on the verge of a nervous break-down. I cannot talk about this house without crying. My son has been so upset that he has been reduced to tears when we talk about it. The last five months have become a nightmare for us. I spent my life savings buying this house for Mike ( and 103 Brook Ter., for my son, Jason ). We bought it in good faith that we were buying a new home that would last for many years. Instead we have a patched up house, that will never be right and will continue to give us problems for years to come. It has only brought us pain and suffering.

I am including copies of the dated lists of problems and repairs needed, that have been turned in to the office. Some of it is minor repairs. A lot of it is very serious faults. Many of the same items appear over and over again because they were not done or were only partially done.

Following is a list of the serious problems wrong with the house that we found ourselves or that the contractors found. This house supposedly was inspected and passed by the state with these obvious things wrong:

1. Standing water under the house.
2. No lag bolts bolting the house together at the marriage line, only short screws.
3. Many of the jacks ( piers ) were not bolted to the house and not attached to the footings on the ground.
4. Many of the top posts on the jacks are rusted.
5. The sewer line had illegal T-joints.
6. There were cracks and holes in the retaining wall.
7. There were very large holes in the belly plastic, with insulation hanging out on the ground. One large area had NO insulation and NO belly plastic. There are holes everywhere.
8. The lot was not properly graded.
9. The large Air and heat duct was laying on the ground.
10. Dirt was piled up against the masonite skirting, which we had been told was cement board, but wasn't.
11. There was untreated wood stakes and supports in the dirt, under the house.
12. The main steel I-Beam, running down the center of the house, was bent out of shape at the front and rear of the house. The weld had broken at the joint with the cross beam.
13. The floor, inside the house, down the marriage joint, was higher on one side. It could not be leveled because they had used Fix-All patching plaster, trying to level it.
14. The front porch is not level and has a leaning post.
15. There was mold covering the back side of the rear porch and on the inside of the water heater door.

There are people living all around us that saw the house being installed. They saw the standing water under the house and went to the office to report it and other problems. They were told to mind their own business. We were told that they were crazy and that there was nothing wrong with the house. It had passed the state inspection. When neighbors told us about the mold on the back of the rear stairs and the water problem, we started checking and found many more illegal conditions. Cal - AM had been lying all along. We asked about # 94, which we had seen with no skirting and being worked on for several months. We were told, by Brian and Joi ,that they were just waiting for their skirting to be delivered. After talking to # 94 about their problems, we found out that Cal-AM knew all along about the illegal installation work that had been done by the first contractor and did nothing to correct it before selling the house to us.

From the beginning we were lied to over and over again. We were told that the house was 1508 sq feet.

I asked several times if that was right, because I had owned a home that was 1500 sq feet. We measured it and then went on the internet, and got a copy of the floor plan, and found out it was 1386 sq feet. I specifically asked if the siding was cement board and was told " Yes, the whole house is cement board ". It was not. We were told that all the minor repair and touch-work would be done before the move-in date. It was not. We were promised an extended 5 year warranty and have never received it.

The day Mike moved into the house, the carpet company was installing carpet while Mike was waiting. They could not move in until late afternoon. The contractor was inspecting the house while Mike was moving in.

Our lives have been totally disrupted since Mike moved in. Much of the work has been done, but we have suffered many months of waiting for workers who did not show up when promised. Many times we were promised a work schedule, so we would know when they were coming, but we have never been given one.

Mike works nights, from 4 pm to 4am in the morning and needs to sleep during the day. I had also bought 103 Brook Terrace for my son , Jason. Joi told the contractors to work on 103 in the mornings and 148 after 1 pm when Mike gets up. They did not. Many times they would show up at 148 to work in the morning and wake up Mike. Or they would say they were coming at 1 pm and would not show up at all. Sometimes they would come late in the afternoon or evening and work only a couple of hours. Many weeks they did not come at all. I have had to be there daily, waiting for the workers who were supposed to come and work and did not.

Joi made arrangements for Mike to stay in a Hotel for two weeks, so they could work full time and finish the work. They only worked two full days and two ½ days. Most days they did not come at all or only came for a couple of hours. On four different nights when Mike went to the Hotel he was turned away because the credit card was no good. He was treated like a bum and was humiliated. He would call me at 4 am in the morning in tears. A couple of those times I had him come to my house. I got out of bed so he could sleep and then the workers never showed up at his house.

For months we have had to walk over piles of dirt, all around the house, blocking the front door and we could not even use the rear door. We had neighbors constantly complaining about the piles of dirt, about workers in their yard, trucks blocking the street so they could not get out of their driveway and noise.

In order to solve the marriage line problem, they had to come in and tear up the carpet to fix it. We had to be outside for the whole day , again. Every time they come in to fix all the cracks, we have to be outside all day. This last time they had to fix 35 cracks and sheetrock problems. We are still waiting for the painting to be done, again.

Mike and I have had to crawl under the house four times to see if the jacks had been attached to the house and to see if the belly plastic had been repaired. We had been told that the work had been done, but it was not . Mike took pictures every time we went under the house, when we were told the work was done. He has dated pictures of the same big holes with insulation exposed, that he took each time we went under it.

The state inspector, Frank Gomez, told us and the contractors that they needed to find a way to stop the water from going under the house, from the porch. Two contractors said they could put a block wall between the porch and the house and install a drain under the porch to take the water away. Joi told us it would be done. It was never done. We cannot hose off the porch because water pours through the decking and under the house. When it rains it will go under there also. They did install drains along the outside of the retaining walls.

The lot has never been graded properly.

Because of the fact that the first contractor did not install any lag bolts along the marriage line, under the house, we are very concerned that he also did not install them along the roof joint. We have asked that the

roof joint be inspected, but they have refused to do it.

We have requested, several times, that cement, NOT grass, be installed at the street end of the house, because of the fact that the lot is not graded properly. They installed grass anyway. The ground and grass are much higher outside than it is under the house, at the street end. From the very first day, the sprinkler was running on the grass, it flooded under the house. The ground is now soaking wet, back 10 to 20 feet under the house. We were asked how we wanted the sprinklers to be put in. We asked for them to install them so they would spray away from the house. They did not. The sprinklers on the back side of the house are hitting the house and the air vents. I have asked that they be turned down so they are not hitting the house. That has not been done. Also, when they put the grass in, they cut off the French drain at the corner of the house, so that when it rains all the water from the roof will go directly under the house.

We requested that a cement sidewalk be installed from the front porch around the back side of the house, to the street end. When we exit out our rear door we have to climb over all of the utility lines, water and sewer lines, to get to the street. We have asked Brian and Joi many times about the cement and they just ignored us and installed grass instead.

The ceiling fans were missing in the living room and bedroom. We were told that we had to install our own. 103 Brook Ter., came with the fans already installed. We want fans installed by Cal-Am.

It is not bad enough that I have had to spend every day of my life at 148, since May 1, waiting for the contractor who does not show up. Now that my son, Jason, has moved into his house at 103 Brook Ter., I am having to run back and forth between the two houses. They, also, did not finish the work on 103, before Jason moved in. I am again waiting for the contractor, who promised to come in the morning and did not show up until late afternoon. Also, we requested that the sprinklers, on the grass be installed facing away from the house. They were not. They are spraying over the side walks, high on the walls and window and into the air vents on the sides of the house. We cannot walk into the house on either side with out getting soaking wet. I went into the office, soaking wet, and showed Brian, after asking three times to have the sprinklers turned down, or changed so they would sprat away from the house. They were not. The porch was never cleaned after they finished working. Jason moved in with no gas turned on, the water heater not on, no hot water, the stove not working, the air conditioner not working, no water to the refrigerator, the dryer vent not installed correctly, the belly fabric not repaired, the posts on the front porch not painted to match, a poorly done and ugly patch on the front porch, the painting not done on the inside and various other inside repairs not done. Also, there is a serious crack across the sidewalk. We were promised that a wall and drain would be installed between the house and porch to stop water from going under the house. It was not done and Jason cannot hose off his porch.

It is impossible to even begin to convey the great amount of stress and anxiety we have suffered these last five months, and continue to suffer daily. I have only been able to tell a very small part of what we have gone through.

We feel that giving us a cement sidewalk on the side and cement at the street end, instead of grass, and giving us fans in the living room and master bedroom at 148 Coleridge, would be small compensation for all that we have suffered and continue to suffer

Thank-you,

Joyce Anderson
Mike Anderson
Jason Anderson



June 29, 2007

Field Report by Mike Edwards, Service manager, Cavco Durango Division

Home SN 06-0873

Owner: Joyce Anderson (Residence for Michael Anderson)
Home located at:
Southlake Park
148 Cole Ridge Terrace
Fremont, CA 94538

To all concerned:
On June 26, 2007 I performed a field inspection of the home purchased by Joyce Anderson at Southlake #148. The home is occupied by Mrs. Anderson's son, Mike. Present at the inspection were Ron Rovan, local contractor performing work for Cal-Am and Cavco, Mrs. Anderson and son Mike, and me.

The purpose of my inspection was to determine which items listed in a complaint letter filed by Mrs. Anderson with the California Department of Housing and Community Development are Cavco responsibility. There are certain items contained in the complaint that do not fall under the Cavco warranty. Some of the items involve local codes which are being disputed by the Andersons. As a factory representative, I am not in a position to enforce or determine what is and is not acceptable according to local codes and requirements. Those items will need to be determined by local and state inspectors and Cal-Am.

The items that will be corrected by Ron Rovan under the Cavco warranty are as follows:

1. Check and repair any voids in the undercarriage belly material. There are several areas that need to have the repair tape stapled to the rim joist around the exterior edges. Others in the field areas will need to be properly sealed using high-tack spray adhesive and new belly materials. Stapling will be utilized where feasible.
2. Touch up painting and caulk is needed at several window trim edges and mitres.
3. Some nail heads are not flush with the porch deck planks and need to be driven and slightly countersunk.
4. The horizontal porch rails on the side of the "X" half are sagging and need a support block under the center of the bottom rail.
5. Nail head exposed under front entry lino in the living room.



6. Caulking voids at edge tiles and backsplash tiles at the master bath countertop and corner tub.
7. Caulking voids below master bath mirror
8. Squeak in master bedroom floor at the side of the bed. Possibly a carpet pad squeak and possibly loose floor decking
9. Touch up needed at the corner of the 2nd bedroom closet header trim. Wrong paint used.
10. Black tape exposed under baseboard at master bath near toilet.
11. Paint on 3 valances in the living room.

Those items of concern that do not fall under the terms of the Cavco warranty are as follows:

1. Marriage line floor at the front of the porch is not even from one side to the other. The result is that the center post which is trimmed and finished on site by the set up installers is trimmed unevenly and gapped at the bottom on the "X" half. I recommend unbolting the floor rim joists and adjusting the height of the floors to realign them from one half to the other. This same condition was also noted in several areas on the interior marriage line floor.
2. The front corner of the Cedar Tone floor deck planking was chipped during set-up or delivery and the touch-up paint used is not an exact match. The color variance is also noted at the piece used to close the gap at the front marriage line.
3. Center post trim at the marriage line on the front porch is uneven and slants from one half to the other.
4. The crossover flex duct under the home is not supported off the ground at 48" intervals per the set-up manual.
5. The exterior siding needs to be touched up to seal the siding where the bottom trim band installed by the previous contractor was removed along with the skirting.
6. The interior close off texture is cracked at the marriage line ceiling, and the close off texture does not match the factory texture.
7. Cracks in drywall texture at the corners of several windows.
8. There is no moisture barrier installed on the ground under the home. This is a recommendation *in areas where moisture under the home is a problem* as stated on page I-6 of the Cavco set-up manual. However, it is a recommendation and not a requirement, so it will need to be determined between local code and the agreement reached between the Andersons and Cal-Am as to whether it will be installed under this home. The ground under the home was completely dry and hard during my inspection except for a 3' x 6' area where the hose bib was turned on the driveway side of the home. This area appears to be drying up naturally.
9. There is no stem wall under the home at the back of the front porch to prevent water run-off from under the front porch from going under the home.



10. The sewer line coming out from under the home is not sloped properly and appears to be sagging just before the line drops into the existing outlet. This could cause the drain to clog or back up.

11. The front steel chassis header on the "X" half was slightly damaged in transit and bent back approximately 2" at the marriage line. It does not appear to be affecting the structural integrity of the home. However, the Andersons are asking that the head rail be straightened back to the proper position.

12. The rear end steel chassis crossmember was slightly bent at the bottom flange of the I-beam on the "X" half where the I-beam and crossmember are welded. There is a slight 1" crack in the weld where the two steel members are joined. In my opinion, the cracked weld will not affect the structural integrity of the home in any way. The Andersons are concerned and have asked that the item be corrected. Ron Rovan has agreed to straighten the bottom flange and reweld the void.

There are similar concerns stated by Mrs. Anderson regarding the home she is purchasing for her other son Jason. His home serial number is 07-0284 is located at space 103 in Southlake. Those issues have been conveyed to both the installers and Cal-Am by Mrs. Anderson. They include:

1. Block stem wall around the home was to have continued all the way down the sides of the home to the rear corners.
2. No stem wall under the home to prevent water intrusion under the home from under the porch.
3. The French drains installed with Styrofoam percolating material instead of rock.
4. Marriage line uneven at the floor of the porch on the front end.
5. Window trim color not what was requested. Color was to match facia.
6. Belly patches need to be secured properly.

The above items are not Cavco warranty items. Again, I am not in a position to determine responsibility of the above mentioned items. Cal-Am will settle the issues and perform any alterations or corrections of the items that do not meet code.

I did not enter Jason's home or do an inspection to determine what factory corrections are needed.

As stated above, as a Cavco factory representative, I am not authorized to order Cal-Am or any of its contractors or employees to comply with local or state codes, or the concerns of the Andersons regarding the stem walls, skirting, piers, drainage of the lot, steps or other accessories installed by other entities not contracted by Cavco.

I will however, refer to the recommendations and requirements of the Cavco Set-Up Manual and emphasize those concerns which could negatively affect the warranty provided by Cavco.



Water intrusion under the home is one of the most important concerns as stated in the set-up manual. I would not expect enough water would be used during routine "hosing down" of the porch as normal maintenance to saturate the underside of the home and cause any significant concern. Whether or not the absence of a stem wall between the porch and the crawl space under the home will allow a significant amount of water under the home is debatable according to how much rainfall occurs and if the rain is wind driven enough to saturate the area under the porch.

The set-up manual specifically states that "the slope of the lot shall be graded to prevent water accumulation under the home."
And:
"Cross ventilation of the crawl space must be provided and shall have a net free area of at least 1 square foot for every 150 square feet of floor area.

Ron Rovan will perform the corrections on Mike Anderson's home that are listed as Cavco responsibility. He will also work with Larry Reich to help satisfy the items of concern that are determined to be corrected by Cal Am.

# Exhibit B

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
CAL-AM PROPERTIES, INC.; CAVCO INDUSTRIES, INC and
DOES ONE through ONE HUNDRED, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
JOYCE ANDERSON and MICHAEL ANDERSON

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED
ALAMEDA COUNTY

APR 2 9 2008

CLERK OF THE SUPERIOR COURT
By Graciela Pacheco, Deputy.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.

The name and address of the court is:    ALAMEDA COUNTY SUPERIOR
El nombre y dirección de la corte es):
24405 Amador Street
Hayward, CA  94544

CASE NUMBER:
(Número del Caso):  VG08384688

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Paul G. Minoletti
Greene, Chauvel, Descalso & Minoletti           650-573-9500           118192
155 Bovet Rd., Suite 780, San Mateo, CA

DATE: APR 2 9 2008 PAT SWEETEN                  Clerk, by        GRACIELA PACHECO
(Fecha)          EXECUTIVE OFFICER/CLERK(Secretario)                                        , Deputy
(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)                (Adjunto)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☑ on behalf of (specify): CAVCO INDUSTRIES, INC.
   under: ☑ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☑ by personal delivery on (date):  5-5-08

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004]

SUMMONS                    ⓒEB          Code of Civil Procedure §§ 412.20, 465

Exhibit "B"

# Exhibit B

(Notice to Adverse Party of Removal To Federal District Court)

1  Robert S. Coldren, Esq., Bar No. 81710
   John H. Pentecost, Esq., Bar No. 99527
2  James S. Morse, Esq., Bar No. 126212
   Boyd L. Hill, Esq., Bar No.140435
3  HART, KING & COLDREN
   A PROFESSIONAL LAW CORPORATION
4  200 Sandpointe, Fourth Floor
   Santa Ana, California 92707
5  Telephone:   (714) 432-8700
   Facsimile:   (714) 546-7457
6
7  Attorneys for Defendant Cal-Am Properties, Inc.

8                  UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10

11 JOYCE ANDERSON and MICHAEL    )    Case No.
   ANDERSON,                     )
12                               )
                                 )
13          Plaintiffs,          )
                                 )    JOINDER IN NOTICE OF REMOVAL OF
14     vs.                       )    ACTION PURSUANT TO 28 U.S.C.
                                 )    SECTION 1441(a)
15 CAL-AM PROPERTIES, INC.; CAVCO )   [FEDERAL QUESTION]
   INDUSTRIES, INC. and DOES 1-100, )
16 Inclusive                     )
                                 )
17          Defendants.          )
                                 )
18                               )
                                 )
19                               )
                                 )
20                               )

21

22 TO THE CLERK OF THE ABOVE REFERENCED COURT:

23      Defendant CAL-AM PROPERTIES, INC., hereby joins in the CAVCO

24 INDUSTRIES, INC.'s Notice of Removal to the United States District Court for the

25 Northern District of California of the action filed in the Superior Court of the State of

26 California in and for the County of Alameda (Case No.: HG08384688 entitled "*JOYCE*

27 *ANDERSON and MICHAEL ANDERSON, plaintiffs, vs. CAL-AM PROPERTIES, INC.;*

28 *CAVCO INDUSTRIES, INC. and DOES ONE through ONE HUNDRED, inclusive,*

                                   1

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1  *Defendants*")

2

3  Dated: ___6/4___, 2008          HART, KING & COLDREN

4

5                                  By: *James S Morse*

6                                  _____
                                   Robert S. Coldren, Esq.
7                                  John H. Pentecost, Esq.
                                   James S. Morse, Esq.
8                                  Boyd L. Hill, Esq.
                                   Attorneys for Defendant Cal-Am Properties,
9                                  Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

2

**PROOF OF SERVICE**

1

2  STATE OF CALIFORNIA, COUNTY OF ORANGE

3      I am employed in the County of Orange, State of California. I am over the age of 18 years and am not a party to the within action. My business address is 200 Sandpointe, Fourth Floor, Santa
4  Ana, California 92707.  On June 4, 2008, I caused the foregoing documents(s) described as:
   **JOINDER IN NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C SECTION**
5  **1441(a) [FEDERAL QUESTION]** to be served on the interested parties in this action as follows:

6

7  by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelopes addressed as stated on the ATTACHED SERVICE LIST.

8
   ☒ **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and processing
9  correspondence for mailing. Under that practice it would be deposited with the U. S. Postal Service on that same day with postage thereon fully prepaid Santa Ana, California in the ordinary course of
10 business. I am aware that on motion of the party served, service is presumed invalid if the postal
11 cancellation date or postage meter date is more than one day after date of deposit for mailing in the affidavit.

12
   ☐ **BY OVERNIGHT COURIER.** I caused such envelope to be placed for collection and delivery
13 on this date in accordance with standard delivery procedures.

14 ☐ **BY ELECTRONIC TRANSMISSION.** I caused such document to be served on this date by
15 electronic transmission in accordance with standard procedures and to the e-mail address listed on the attached service list.

16
   ☐ **BY FACSIMILE:** I caused such document(s) to be transmitted by facsimile transmission from a
17 facsimile transmission machine, at Santa Ana, California, with the telephone number, (714) 546-7457 to the parties and/or attorney for the parties at the facsimile transmission number(s)
18 shown above. The facsimile transmission was reported as complete without error by a transmission
19 report, issued by the facsimile transmission machine upon which the transmission was made. A true and correct copy of the transmission report is attached hereto and incorporated herein by reference.

20
   ☐ **BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the above-
21 referenced person(s).

22 ☒ [Federal] I declare that I am employed in the office of a member of the bar of this Court at whose
23 direction the service was made.

24 Executed on June 4, 2008, at Santa Ana, California.

25

26                                                      Dora Renteria

27

28

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

i

924.004/4814-8477-4914v.1

**SERVICE LIST**

1

2

3      Paul G. Minoletti, Esq.                    *Attorneys for Plaintiff Joyce Anderson and*
        Brandon L. Reeves, Esq.                   *Michael Anderson*
        Greene, Chauvel, Descalso & Minoletti
4      155 Bovet Road, Suite 780
        San Mateo, CA  94402
5      Tel.: (650) 573-9500
        Fax: (650) 573-9689
6

7      Kevin R. Mintz, Esq.                       *Attorneys for Defendant Cavco Industries, Inc.*
        Bryce Gray, Esq.
8      Rankin, Sproat, Mires, Beaty & Reynolds
        1333 Broadway, Suite 600
9      Oakland, CA  94612
        Tel.: (510) 465-3922
10     Fax: (510) 452-3006

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

ii